**Independent Oil Men's Association, Appellee, v. The Fort Dearborn National Bank, Appellant.**

**Gen. No. 27,250.**

1. HARMLESS ERROR—*exclusion of inconclusive evidence.* In an action against a bank by the corporate payee of certain checks to recover the amount thereof which had been paid out by the bank on forged indorsements made by the secretary of the payee, error in excluding the contract of employment between such payee and the forger tending to show that he had authority to collect funds for the corporation is harmless where the evidence shows no authority on the part of such secretary to indorse the checks or collect the proceeds thereof, since the authority to collect does not include any authority to indorse the corporate paper.

2. BANKING—*burden of bank paying check on forged indorsement to prove authority to indorse.* A verdict for plaintiff is properly directed in an action by a corporation, whose secretary had forged its indorsement to certain checks made payable to it and had received the proceeds thereof and applied them to his own use, to collect the amount of such checks from the bank with which they had been negotiated where the evidence shows that the secretary had never indorsed any of the plaintiff's checks or papers except the checks in question and did not show any authority on his part to indorse checks of the company.

3. BANKING—*interest of forger in receipts of. payee as defense in action against drawee for payment on forged indorsement.* In an action by a corporation against a bank to recover the amount of checks negotiated on a forged indorsement by its cashier who received the proceeds and appropriated the same to his own use, it was not error for the court to exclude evidence tending to show that such secretary was entitled to receive 25 per cent of the net

amount realized from the sale of advertising space for plaintiff, such evidence not showing that the secretary had any interest in the checks.

4. BANKING—*evidence to sustain recovery against bank on forged indorsement.* In an action by the corporate payee of checks against a bank with which such checks had been negotiated on a forged indorsement made by the secretary of the payee, who was shown to have received all of the proceeds thereof and appropriated them to his own use, the evidence sufficiently shows that plaintiff did not receive any of the proceeds of such checks where it is not shown that defendant ever paid the plaintiff any portion of the checks and it is undisputed that the secretary received the full amounts and never paid plaintiff any portion thereof.

5. NEGOTIABLE INSTRUMENTS—*assumpsit as proper remedy by payee to recover amount paid on forged indorsement.* The provision of Negotiable Instruments Act, sec. 126, Cahill's Ill. St. ch. 98, ¶ 148, that a bill of exchange does not operate as an assignment of the funds in the hands of the drawee unless and until the drawee accepts the same, is not applicable to bar an action in assumpsit by a corporation against a bank which had collected the proceeds of certain checks payable to plaintiff corporation on which its secretary had forged the corporation's indorsement and received the proceeds which he had appropriated to his own use, and where the corporation has never received any of the proceeds of the checks.

6. BANKING—*duty of payee of check to notify bank of forged indorsement.* A corporation which is not a depositor with defendant bank is under no duty to notify such bank that its secretary had no authority to indorse its checks and that the indorsements made by him on certain checks negotiated to defendant bank, the proceeds of which had been received by the secretary, and applied to his own use, were forged and it was not error to refuse to permit a witness to testify as to when plaintiff notified defendant bank that such secretary had no authority to indorse the checks.

TAYLOR, J., dissenting.

Appeal from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Affirmed. Opinion filed November 29, 1922.

CAMPBELL & FISCHER, for appellant.

ALDEN, LATHAM & YOUNG, for appellee; CHARLES MARTIN, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action of assumpsit against the defendant to recover the proceeds of eleven checks with interest thereon, amounting to $1,514.08, which it claimed defendant had collected and refused to pay over on demand. At the close of all the evidence the court sustained plaintiff's motion for a directed verdict for the amount of its claim. A verdict was accordingly returned and judgment entered thereon, to reverse which defendant prosecutes this appeal.

The substance of plaintiff's claim, as set up in its declaration, was that the defendant conducted a banking business in Chicago, and during the months of November and December, 1918, and January, 1919, eleven parties, being indebted to the plaintiff, made out their several checks to the order of the plaintiff for the amounts due from them to it; that these checks were wrongfully taken from the plaintiff and the indorsement of its name forged thereon; that afterwards the checks came into the possession of the defendant and that it collected them from the various banks on which they were drawn; that the money so collected by the defendant belonged to the plaintiff but that the defendant refused to pay it to the plaintiff on demand. To the declaration the defendant filed a plea of the general issue and an affidavit of merits in which it set up that it had a good defense to the whole of plaintiff's demand; that the checks mentioned in the declaration were duly indorsed by plaintiff, the payee, and deposited with the bank in the usual and customary manner and in the regular course of business. The affidavit further set up as defense that the plaintiff having notice and knowledge that the defendant had received the checks for deposit and had handled them in the usual and customary manner "did not for a long period of time thereafter make any claim against this defendant or seek to hold it on account thereof, and defendant was thereby prejudiced in that it could not take prompt action against the endorser

on said checks, or pursue such remedy as it might have against such endorser.''

There is little or no dispute as to the facts. The evidence in the record is very meager as to the nature of plaintiff's business, but it appears that it was a corporation and maintained an office in the Westminster Building, Chicago, of which one J. A. Specht was in charge. The officers of the association were M. J. Byrne, president, G. I. Sweney, vice president, E. E. Grant, treasurer, and J. A. Specht, secretary. The principal work performed by Specht was the solicitation of advertising matter and the preparation of material for what was known as the Blue Book, to be published by plaintiff. For this purpose Specht had obtained advertisements aggregating $23,000 or $24,-000, and because of the nature of this work he was absent from Chicago a great part of the time. There were two women employed in the Chicago office, one a bookkeeper and the other a stenographer. Specht spent considerable time in the Chicago office and was in charge of it. It seems to be assumed that the eleven checks in controversy came to the Chicago office and into the possession of Specht in the ordinary performance of his duties. Specht took these eleven checks, all of which were payable to plaintiff's order, and indorsed on the back of each ''Independent Oil Men's Association, J. A. Specht, Secy.'' These checks as they were received from time to time were indorsed by Specht and cashed for him by the Moir Hotel Company in Chicago, and the Moir Hotel Company thereupon deposited the checks in its account with the defendant bank and received credit for them. In the regular course of business defendant collected the amount of the eleven checks from the various banks on which they were drawn.

In February, 1919, Specht disappeared and failed to account to plaintiff for the proceeds of the checks. The first of these was dated November 5, 1918, and the last February 10, 1919.

In addition to the facts, as shown by the evidence which we have above set forth, plaintiff introduced a portion of its by-laws setting forth the duties of the treasurer and secretary, from which it appears that the duty of the treasurer was to receive and disburse all funds of the association with the approval of the Executive Committee, and that he should make an annual report of the same; that his accounts were to be audited by a special committee, not to exceed three in number, to be appointed annually by the president. The by-laws provided that it should be the duty of the secetary to keep the records of all meetings and preserve all correspondence of the association incident to his office; that he should represent the association before any federal, state or civic committee or body, preserve all correspondence pertaining to his duties, and be governed by the president and the chairman of the Executive Committee. Plaintiff called its treasurer, Grant, who lived in Evanston but who appears to have known but very little about the business conducted at the Chicago office, his duties taking him to Oklahoma, Missouri, New York and other places. Occasionally he called at the Chicago office. He testified that so far as he knew Specht never signed or indorsed any checks payable to the order of plaintiff with the knowledge or consent of the officers or directors of the plaintiff.

The defendant first contends that the evidence was not sufficient to support the allegation of the declaration that the indorsements on the checks were forged and, therefore, the court erred in directing a verdict for the plaintiff. It further contends that the evidence as to the validity of the indorsements at least presented an issue of fact that should have been submitted to the jury; that the acts of Specht, who was the secretary and professed agent of the plaintiff association, were binding on the plaintiff if it is shown that such acts were done in the usual course of the transaction of plaintiff's business, or if plaintiff has

acquiesced in such agency by accepting the fruits of it.
And it is argued that if the court had admitted proper
evidence offered by the defendant tending to show
that Specht had authority to collect moneys belonging
to the plaintiff, the jury might properly have found
that Specht was authorized to indorse the checks in
question. The evidence offered by defendant, the ex-
clusion of which is complained of, was a written mem-
orandum of employment between plaintiff, signed by
its president, and Specht, under which agreement
Specht was employed. It provided in part as follows:
"The secretary  *  *  *  shall keep collected promptly
all moneys due the association from whatever source,
and shall during the first week of each month furnish
the directors with a trial balance or statement show-
ing the financial condition of the association, includ-
ing, 1st, cash received during the month and from
whom; 2nd, cash expenditures to whom paid; 3rd, bills
and accounts receivable and bills and accounts pay-
able." The agreement further provided that Specht
should be a resident of Chicago or one of its suburbs,
and should be at plaintiff's office during business
hours, unless necessarily absent therefrom in the line
of his duties as secretary. We think the court was in
error in excluding this document, but in the view we
take of the case the error is not such as would warrant
us in disturbing the judgment.

It might seem that where checks are made payable
to a corporation and indorsed by its secretary that
such indorsement would, prima facie, be valid, but we
find the Supreme Court has held otherwise in the case
of *Jackson Paper Mfg. Co. v. Commercial Bank,* 199
Ill. 151. That was an action of assumpsit brought by
the paper company against the bank. The facts there
were that the paper company was engaged in manu-
facturing and selling paper at Jackson, Michigan; that
it employed one Charles A. Jackson to act as superin-
tendent of its mills; that in the course of his duties

Jackson came to Chicago to solicit orders and make collections; that he received a check from one of the paper company's customers payable to the paper company in payment of a bill. The check was drawn on defendant bank. Jackson called upon another customer of the plaintiff company, indorsed the name of the company upon the check he had previously received by himself as superintendent, and received cash for it which he appropriated to his own use. The customer, Copelin, who cashed the check for him, then indorsed it and deposited it in the American Exchange National Bank, with which he dealt. In due course of business the check was paid by the Commercial Bank, and thereafter the paper company brought suit against that bank to recover the amount of the check. In the trial court the defendant bank was successful and on an appeal to the Appellate Court the judgment of the trial court was affirmed (99 Ill. App. 114). On a further appeal to the Supreme Court the judgments of the trial court and of the Appellate Court were reversed. The Appellate Court held that the burden of establishing Jackson's lack of authority to indorse the check was upon the paper company. The Appellate Court said: "In this case the affirmative of the proposition that the check indorsed by the superintendent of the company was unauthorizedly indorsed was first asserted and was assumed and held by the appellant and the burden of proof was upon it." The Supreme Court held that this was wrong and further held that since it appeared that the indorsement on the check was made by an agent, the burden of establishing the agent's authority was on the defendant bank. The Supreme Court there said (p. 156): "The power of an agent to bind the principal by the making or indorsing of negotiable paper can only be charged against the principal by necessary implication, where the duties to be performed cannot be discharged without the exercise of such a power, or where the power is a manifest-

ly necessary and customary incident of the character bestowed upon the agent, and where the power is practically indispensable to accomplish the object in view. An agent cannot bind his principal by making or indorsing notes for his own benefit, or the benefit of third persons.'' The court there also held that the indorsement was evidently made by Jackson, the superintendent, for his own benefit; that it was not shown by any evidence in the record that Jackson had ever indorsed a check of the paper company except the one in question. And in holding that the burden of proving Jackson's authority to indorse the check was upon the defendant bank, the court said (p. 165): ''It was held by the court below in the instructions given by it to the jury that the burden of disproving the authority of Jackson to indorse the name of the appellant upon the check in question was upon the appellant. In our opinion this holding was wrong. The appellant asked the court to instruct the jury that 'the burden of showing the authority of a stranger to a check to indorse the same for the payee is upon the drawee, if he would escape liability to pay over again to the payee,' and this instruction was refused by the court. It should have been given. Where one attempts to take advantage of the act of an agent, it is for him to show the authority of that agent.'' We are unable to distinguish that case in principle from the case at bar and the defendant has not attempted to do so in its reply brief although plaintiff relies principally on that case.

In the instant case there is no evidence in the record that Specht ever indorsed any other check, nor was the evidence offered sufficient to warrant the finding that he had such authority. And since the law, as announced in the *Jackson* case, places the burden of showing Specht's authority on the defendant, and since the evidence failed to show that Specht had such authority, it was the court's duty to direct a verdict, as it did, for the plaintiff.

578    APPELLATE COURTS OF ILLINOIS.

Independent O. M. Ass'n v. Ft. Dearborn Nat. Bk., 226 Ill. App. 570.

Our attention has been called to an opinion handed down by another division of this court in the case of *Independent Oil Men's Ass'n v. National City Bank of Chicago,* 225 Ill. App. 648, wherein the authority of Specht to receipt for a Liberty bond from the defendant bank in that case was involved. It was there held that whether Specht had authority to receipt for the bond in the name of the plaintiff should have been left to the jury, and we think properly so. But the authority of Specht to receipt for a Liberty bond would not under the law give an authority to indorse negotiable paper.

Defendant also contends that it was error for the court to exclude evidence offered by it tending to show that Specht was entitled to 25 per cent of the proceeds of the checks, because this would show that plaintiff's damages were 25 per cent less than the face of the checks. We think there was no error in the action of the court in excluding this evidence. The evidence was not sufficient to show that Specht had any interest in the checks. It tended to show that he was to receive 25 per cent of the net amount realized from the sale of advertising space for the Blue Book, and was clearly insufficient and was, therefore, properly excluded. Nor is there any merit in the point made that the evidence fails to show that plaintiff did not receive the proceeds of the checks. From a consideration of the record there can be no question that plaintiff never received any part of the money collected by the Fort Dearborn Bank on these checks. If any of the proceeds had been paid by the defendant bank to plaintiff, it was incumbent on the bank to show this fact.

It is contended by the defendant that an action of assumpsit will not lie in the instant case because section 126 of the Negotiable Instruments Act [Cahill's Ill. St. ch. 98, ¶ 148] provides that a bill of exchange does not operate as an assignment of the funds in the hands of the drawee unless and until the drawee ac-

cepts the same. We think that section is in no way applicable here. It relates to the right of a payee of a check against the bank on which it is drawn before acceptance. Here it is undisputed that the defendant collected the proceeds of the eleven checks which belonged to the plaintiff and has not turned over any of the proceeds to the plaintiff. In these circumstances we think it clear that an action of assumpsit will lie.

It is further argued that the court erred in refusing to permit a witness to answer questions asked him as to when the plaintiff notified the defendant that Specht had no authority to indorse the checks, and it is stated by counsel for the defendant that the trial court so ruled on the authority of the case of *Hamlin's Wizard Oil Co. v. United States Exp. Co.*, 265 Ill. 156 [7 N. C. C. A. 638]. The court there held that the plaintiff was not prejudiced even if it were negligent in failing to notify the defendant promptly of its agent's unauthorized acts in forging plaintiff's indorsements on checks and drafts because the plaintiff owed no legal duty to defendant to do so. In that case one Walsh, an employee of the Wizard Oil Company, had for years been forging plaintiff's indorsements on checks and drafts and turning them over to the defendant express company receiving therefor money orders which he cashed for his own purposes. Suit was brought by the Wizard Oil Company against the express company to recover the amount of the checks and drafts, and it was contended that no recovery could be had because plaintiff was negligent in not examining its books which would have readily shown Walsh's fraudulent transactions. The court held that plaintiff, as matter of fact, had been negligent in the respect complained of, but that since it owed no legal duty to the defendant it was not guilty of negligence as a matter of law, and said (p. 162): "The general rule is that a person or corporation called upon to act upon the faith of a written instrument, including an indorsement of

negotiable paper, must ascertain its genuineness at his peril. The principle rests in public policy and has been universally considered necessary for the security of commercial transactions.'' The court there points out that in some cases a depositor might be barred from recovering against his bank on account of his negligence in failing to discover fraud in obtaining money on the depositor's checks. But in the case at bar the relation is not that of depositor with his bank, and, therefore, we are of the opinion that the rule stated in the *Wizard Oil* case is applicable here, and that plaintiff owed no duty to the defendant to notify it that the indorsements on the checks were forgeries. Since it owed no duty to the defendant in this respect, it follows that it cannot be held. to have ratified the fraudulent indorsements.

The judgment of the superior court of Cook county is affirmed.

*Affirmed.*

Thomson, P. J., concurs.

Taylor, J., dissenting: The terms of Specht's employment by the plaintiff, which were in writing and which were offered in evidence and rejected by the trial court, provided that Specht, as secretary, ''shall keep collected promptly all moneys due the association from whatever source, and shall during the first week of each month furnish the directors with a trial balance or statement showing the financial condition of the association, including, 1st, cash received during the month and from whom; 2nd, cash expenditures to whom paid; 3rd, bills and accounts receivable and bills and accounts payable.'' It will thus be seen that Specht was under a definite obligation by the terms of his employment not only to keep ''all moneys due'' collected promptly and from whatever source, but to keep a record of the credits and debits and furnish a trial balance at a specific time in each month to the

directors. That situation is entirely dissimilar to that in the *Jackson Paper Co.* case. In the latter case a superintendent, whose very name segregates him from anything that pertains to the current finances of the corporation, undertook to indorse the checks of the company. In the commercial world anyone would look with suspicion on the signature of a corporation known to be made by a superintendent. That, however, is not true where the name of the corporation is signed by a secretary.

My judgment is that the evidence that was offered should have been admitted and that it would have shown sufficient authority on the part of the secretary to sign the name of the company. The tendency of the law has been for a great many years towards considering choses in action in the commercial world more and more as chattels so as to facilitate business and simplify all matters of exchange. Under the circumstances I am constrained to dissent.