## Woodlawn Trust & Savings Bank, Appellee, v. John Donaho, Appellant.

### Gen. No. 30,059.

1. MUNICIPAL COURTS—*discretion of court to refuse leave to file interrogatories and rule for answer.* Where the defendant in an action to recover the amount of a check issued by defendant, on which defendant had stopped payment after plaintiff had cashed it, presented a motion after pleadings were filed asking leave to file forty interrogatories and a rule upon plaintiff to answer them, it was not error for the court to deny such motion, although the interrogatories touched many matters which would have been proper subject of inquiries through witnesses in the course of the trial, since it was not an abuse of the discretion of the court to hold that interrogatories to such an extent went beyond the intendment of the governing provision of the Municipal Court Act, Cahill's St. ch. 37, ¶ 420.

2. NEGOTIABLE INSTRUMENTS—*burden of proof as to forgery of indorsement of check on which payment stopped, as between holder and maker.* Where the defendant in an action by a bank to recover the amount of a check issued by defendant, on which defendant had stopped payment after plaintiff had cashed it, alleged in a sworn affidavit that the indorsement placed upon the check before it was presented to plaintiff was a forgery, the burden of proof as to the issue of forgery so raised was upon defendant.

Appeal by defendant from the Municipal Court of Chicago; the Hon. WILLIAM E. HELANDER, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1925. Affirmed. Opinion filed December 23, 1925.

PEDEN, GRAYDON, KAHN & MURPHY, for appellant; GERALD RYAN, of counsel.

LANGWORTHY, STEVENS & McKEAG and HILL & PEDDERSON, for appellee; FRANK C. HILL, of counsel.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

By this appeal the defendant seeks to reverse a

judgment for $300, recovered against him by the plaintiff bank in the municipal court of Chicago.

It appears· from the record that one Mitchell, purporting to represent a concern described as ''J. W. Griffith & Co.,'' called upon the defendant, Donaho, soliciting his purchase of bonds, and the defendant agreed to purchase, through Mitchell, a certain $500 bond, which Mitchell promised to· deliver to the defendant at his office within the following day or two. In part payment for the bond the defendant executed his check for $300, drawn to the order of J. W. Griffith & Company on the Union State Bank of South Chicago, and delivered that check to Mitchell. On the following day this check was presented to the plaintiff bank and at that time it bore the following indorsements:

''J. W. Griffith & Company,
    per P. A. Maroney.
Samuel A. Porter,
P. A. Matchette.''

Following these indorsements were those of the plaintiff bank and the Federal Reserve Bank of Chicago, in which the plaintiff bank deposited the check after cashing it upon presentation to it for that purpose by P. A. Matchette. The defendant, failing to receive the bond he had purchased through Mitchell, stopped payment on his check before it was presented to the bank on which it was drawn. The plaintiff bank, having cashed the check and being unable to collect it from the defendant's bank, brought this action against the defendant to recover the amount of the check. The defendant filed an affidavit of merits, alleging, among other things, that he had never received the bond, in part payment for which the check had been given, and also that the indorsement of J. W. Griffith & Company on the check was a forgery.

The issues were submitted to the court without a jury and the court made a finding for the plaintiff and

entered judgment in its favor, from which the defendant has perfected this appeal.

After the pleadings were filed the defendant presented a motion to the trial court, asking leave to file certain interrogatories and requesting that a rule be entered on the plaintiff to answer them. The interrogatories thus presented were forty-four in number and went into many phases of the situation which would have been proper subject of inquiry through witnesses in the course of the trial. In our opinion, however, the trial court did not err, as the defendant now contends, in denying his motion. It was not an abuse of the discretion resting with the court, on such a motion, to hold that this long list of questions went quite beyond anything contemplated in the section of the Municipal Court Act providing for the filing of interrogatories. (Cahill's St. ch. 37, ¶ 420.)

The only evidence submitted by the plaintiff on the trial was the testimony of its teller, who identified the check and testified that when it was presented by Matchette, with the request that it be cashed, the bank cashed it; and of the assistant cashier who testified that no part of it had been paid to the plaintiff bank either by the defendant or the bank on which the check was drawn. The only evidence submitted in behalf of the defendant consisted of his own testimony, to the effect that he drew the check in part payment for the bond, and delivered the check to Mitchell for that purpose, but never received the bond and for that reason he stopped payment on the check three days after its date.

The sole question involved on this appeal, other than the one already referred to, is: Which party had the burden of proof on the issue involving the alleged forgery? The defendant contends that by reason of his affidavit under oath, alleging forgery, the burden was upon the bank to prove good title to the check in it; while the bank contends, on the other hand, that

at least prima facie, it was presumed to be a holder in due course, and that notwithstanding the defendant's pleading under oath, the burden was upon him to overcome that prima facie case, by proving the forgery alleged.

In support of his position the defendant relies upon the cases of *Jackson Paper Mfg. Co. v. Commercial Nat. Bank,* 199 Ill. 151; *Independent Oil Men's Ass'n v. Ft. Dearborn Nat. Bank,* 226 Ill. App. 570, 311 Ill. 278; *Pierik v. Mueller,* 201 Ill. App. 108; and *Bippus v. Vail,* 230 Ill. App. 633. The *Jackson Paper Mfg. Co.* case was a suit by the payee of a check against the drawee bank. The check was drawn to the order of the plaintiff, Jackson Paper Mfg. Co., and was indorsed, "Jackson Paper Mfg. Co., C. A. Jackson, Supt." The plaintiff contended that Jackson was without any authority to indorse the check. The Supreme Court held that in order to avoid liability in the suit brought by the plaintiff payee, the burden was on the defendant bank to show that Jackson was authorized to indorse the plaintiff's name on the check.

The case of *Independent Oil Men's Ass'n v. Ft. Dearborn Nat. Bank* was a suit by the payee of certain checks against the bank which had credited the amounts of the checks to the account of one of its depositors, who appeared as an indorsee of the checks, which bank in turn had collected the amounts of the various checks from the banks on which they were drawn. It was contended by the plaintiff in that case that the indorsements appearing on each of the checks reading: "Independent Oil Men's Assn., J. A. Specht, Secy.," were forgeries, Specht being without authority to indorse the plaintiff's name on the checks or to cash them. In that case this court, following the *Jackson Paper Mfg. Co.* case, held that the burden of showing Specht's authority to indorse the checks was upon the defendant bank. That decision was affirmed

by the Supreme Court, that court saying in the course of its opinion, among other things, that the burden was upon the bank to show that Specht had authority to indorse the checks there in question.

In our opinion neither of those cases is in point here. In both of them the suit was by the payee of negotiable paper, in one case against the bank on which the paper was drawn, and in the other case against the bank which honored the paper and cashed it. In both cases the rule as to burden of proof was applied in favor of the payee of the paper involved. The case at bar is a suit by the bank which honored the paper and cashed it, against the maker, and the latter seeks to have the rule as to burden of proof applied in his favor, and against the bank which cashed the paper. That being the situation here the plaintiff relies on section 59 of the Negotiable Instrument Law (Cahill's St. ch. 98, ¶ 79) which provides that: "Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. *But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title.*" This provision of the Negotiable Instrument Law would have no application to the situations presented in either of the two cases above referred to, for in both of those cases the rule as to the burden of proof was applied in favor of the payee of the checks and he was not a party who became bound on those instruments prior to the acquisition of the defective titles which were alleged to have come into existence. In the case at bar, on the other hand, the rule as to burden of proof is sought to be applied in favor of the maker of a check who did become bound on it prior to the acquisition of the

defect in the title which he alleges came into existence by the forged indorsement of J. W. Griffith & Company.

The last sentence of the section of the statute referred to above is in the nature of an exception to an exception to the general rule announced in the first sentence of the section. The first sentence of the section states that every holder of commercial paper will be presumed prima facie to be a holder in due course. The section then states an exception to that general rule to the effect that a holder may not be considered prima facie to be a holder in due course, but will have the burden of proving, in effect, that he is such, when it is "shown"—not when it is "alleged"—that the title of any person who has negotiated the instrument prior to his acquiring it was defective. After setting forth that exception to the general rule the last sentence then proceeds to state an exception to that exception, by saying that the rule announced in the exception, placing the burden upon the holder under the circumstance there recited, may not be applied in favor of any party who has become bound on the instrument prior to the acquisition of the alleged defective title. In our opinion, the situation presented in the case at bar comes within the exception to the exception to the general rule, which is laid down in the last sentence of the section of the statute referred to. The defendant, Donaho, admits that he signed the check and delivered it, drawn to the order of J. W. Griffith & Company, but that after having done so the indorsement of the payee, of the check was forged. Clearly, he became bound on the instrument prior to the acquisition of defective title through that forged indorsement. Under the provisions of this section of the act, the rule placing the burden of proof on the holder, to establish that he is in fact the holder in due course, may not be applied in favor of the defendant.

*Bippus v. Vail* was a suit by the indorsee of a promissory note against the maker. The note had been drawn to the order of one Jones and purported to be indorsed by him. In that case the defendant filed a verified special plea, setting up that the note was not executed by him. The sole question presented to this court in that case was whether or not the plaintiff was required to submit some proof on the proposition of delivery of the note, in order to make out a prima facie case, and this court held that he did. The plaintiff in that case relied upon section 16 of the Negotiable Instrument Law (Cahill's St. ch. 98, ¶ 36), providing that where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him will be conclusively presumed, and where it is no longer in the possession of a party whose signature appears thereon, delivery by him will be presumed, until the contrary is proved. The defendant, on the other hand, relied on section 52 of the Practice Act (Cahill's St. ch. 110, ¶ 52), providing that no person shall be permitted to deny the execution or the assignment of any instrument in writing on the trial of a case involving such an instrument, unless the party so denying such execution or assignment shall verify his plea by affidavit. In the course of our opinion in that case this court pointed out that the proposition involved in section 52 of the Practice Act had been the law of this State since 1827, it first appearing as a part of section 12, of an ''Act concerning practice in courts of law,'' approved in January of that year. We also pointed out that the proposition involved in section 16 of the Negotiable Instruments Law was but a restatement of the general rule to that effect, as it existed long prior to the enactment of that law, and that when the rule laid down in section 16 was the law, as a part of the Law Merchant, the presumptions therein provided for were considered as destroyed if

such matters were expressly denied by the defendant by his verified plea, citing cases.

Further, in our opinion, the case of *Bippus v. Vail* is not in point in the case at bar. That case involved two general rules, both of them having long been the law of this State. One of the rules provides that where a negotiable instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him shall be conclusively presumed, and when the instrument is no longer in the possession of the one whose signature appears upon it, a valid and intentional delivery by him will be presumed until the contrary is proved. We held in that case that the effect of the latter part of the general rule was destroyed by the second general rule, having the effect of placing the burden of showing execution on the plaintiff, where the defendant denied such execution by verified plea. But, in section 59 of the Negotiable Instrument Law (Cahill's St. ch. 98, ¶ 79), the legislature introduced a provision into our law, for the first time, so far as we are able to find—this law having been adopted in 1907—to the effect that although the prima facie status of a holder in due course may be destroyed, when it is shown that the title of any person who has negotiated the instrument was defective, and the burden will then be upon him to establish that he is a holder in due course, nevertheless, this rule may not be applied in favor of a party who became bound on the instrument prior to the acquisition of such defective title. In including this provision in the Negotiable Instrument Law, our legislature must be considered as having created a specific exception to what had been general rules in our law on this subject in various forms prior to that time, and that specific provision enacted by the legislature as a part of the Negotiable Instrument Law must prevail over those general rules.

The case of *Pierik v. Mueller, supra,* was a suit in-

volving several pieces of negotiable paper. One was a note for $500, in which the defendant was the maker and the Western States Life Insurance Company was the payee. This note bore a stamp indorsement reading, "Without recourse pay to the order of bearer, Western States Life Insurance Company." It appears that this note was given by the defendant in payment of a subscription he made to the capital stock of the payee, insurance company, which was being organized, but the organization of this company was never completed and it was merged with another insurance company. The plaintiffs claimed that the note had been indorsed by one Kingsbury, who was one of the promoters and incorporators of the insurance company, and was by him turned over to them in repayment of a cash subscription they had made to the capital stock of the proposed company. Among other pleas the defendant filed a verified plea denying the indorsement of this note. In the course of its opinion the court said: "The plea denying the indorsement of the $500 note placed the burden on appellants (plaintiffs) of proving that the indorsement was made by the corporation." No reference is made by the court in its opinion to any provisions of the Negotiable Instrument Law and no cases are cited or referred to. It will be seen that in the *Pierik* case, the court applied the rule, as to burden of proof, on an issue as to the validity of an indorsement raised by verified plea, in favor of the maker of the instrument which was involved in that case, which was applying the rule in favor of a party who became bound on the instrument prior to the acquisition of the alleged defective title. We are of the opinion therefore that the decision was contrary to the provisions of section 59 of the Negotiable Instrument Law.

Another case involving the question of the burden of proof in such a situation as is presented in the case at bar is *Nokomis Nat. Bank v. Hendricks*, 205

Ill. App. 54, in which it was held that where the title of anyone who negotiates a negotiable instrument is shown to be defective, the rule that the burden is upon the holder to prove that he, or some person under whom he claims, acquired title in due course does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title.

It will be seen that the case at bar involves in no way the question of who should stand the loss, where a bank cashes a check containing an indorsement which is forged. The question of what the decision in this case should have been, had the defendant proved that the indorsement of J. W. Griffith & Company on his check was forged, as he alleged, is not before us. The sole question is: Did the plaintiff have the burden of proof on that issue? For the reasons we have given, we are of the opinion that it did not, and, therefore, that the proof it submitted made out a prima facie case, contrary to the defendant's contentions.

For the reasons stated the judgment of the municipal court is affirmed.

*Judgment affirmed.*

Taylor and O'Connor, JJ., concur.