HAMLIN'S WIZARD OIL COMPANY, Defendant in Error, *vs.* THE UNITED STATES EXPRESS COMPANY, Plaintiff in Error.

*Opinion filed October 16, 1914.*

1. EVIDENCE—*what evidence is prima facie sufficient to establish a forgery.* In a civil case, proof that the indorsement on a check or draft is not in the handwriting of the purported indorser is sufficient, *prima facie,* to establish a forgery and justify a judgment based upon the fact of such forgery without proof, in the first instance, that the party writing the indorsement was not authorized to do so.

2. SAME—*when defendant cannot object to entries in books of account.* Where the defendant in a civil suit offers in evidence entries in the plaintiff's books of account to establish credits in the defendant's favor on the assumption that the entries were competent evidence of admissions by the plaintiff, the defendant cannot deprive the plaintiff of the benefit of other entries in the books relating to the same subject matter by objecting to such entries on the ground that it appeared the books had not been honestly kept.

3. BILLS AND NOTES—*what does not defeat action to recover because of forged indorsements.* In a civil suit to recover the amount of certain checks and drafts cashed by the defendant on alleged forged indorsements of the plaintiff's name, the fact that plaintiff might have brought actions against the makers or other indorsers does not affect the right of action against the defendant.

4. SAME—*general rule as to indorsement of commercial paper.* The general rule is, that a person or corporation called upon to act upon the faith of a written instrument, including an indorsement of commercial paper, must ascertain its genuineness at his peril; and this rule rests upon public policy and is necessary for the security of commercial transactions.

5. SAME—*when express company is liable because of forged indorsements.* Where an express company, in payment for money orders, accepts checks and drafts payable to a business corporation and bearing indorsements forged by an employee of the corporation, who converted the money orders to his own use, the express company is liable to the corporation for the amount of such checks and drafts, notwithstanding the corporation might have prevented the fraud had it used care in examining its books, which were kept by the employee, there being no question in the case of authority or apparent authority to make the indorsements as agent.

6. NEGLIGENCE—*where there is no legal duty to exercise care there is no negligence in law.* While negligence is frequently defined as the failure to exercise that degree of care which ordinarily prudent persons are accustomed to exercise under like circumstances, yet it is an essential ingredient that there be a violation of a legal duty, and where there is no legal duty to exercise care there is no negligence in law.

WRIT OF ERROR to the Branch "D" Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. WILLIAM N. COTTRELL, Judge, presiding.

WINSTON, PAYNE, STRAWN & SHAW, (SILAS H. STRAWN, EDWARD W. EVERETT, and WALTER H. JACOBS, of counsel,) for plaintiff in error.

HAMLIN & TOPLIFF, (LOUIS M. GREELEY, and MORRIS ST. P. THOMAS, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The Appellate Court for the First District affirmed a judgment recovered by defendant in error, Hamlin's Wizard Oil Company, upon a verdict directed by the municipal court of Chicago against the plaintiff in error, the United States Express Company, for $20,107.08, the amount of one hundred checks and drafts, with interest thereon, which were payable or indorsed to the order of the defendant in error and which the plaintiff in error received and collected under indorsements of the defendant in error which were alleged to have been forged. A writ of *certiorari* was granted for the purpose of reviewing the judgment of the Appellate Court.

Plaintiff is a corporation which was engaged for more than twenty years in the manufacture and sale of proprietary medicines. It employed a large number of traveling men engaged in selling its products throughout the United

States and Canada, and their salaries and expenses were paid by express money orders. It also used money orders to pay claims of its customers against it. Defendant is a corporation which during the same period was engaged in the business of transmitting money, merchandise and other property by express, and it maintained an office in Chicago where it issued money orders to its patrons. During the period mentioned the plaintiff purchased all of its money orders from the defendant and used them in the same manner as checks or drafts, as a convenient method for transmitting funds to its traveling men and customers. In 1899 A. M. Walsh was employed by the plaintiff in its advertising department and in 1901 he was placed in charge of the company's books, and from that time until February 15, 1910, when he disappeared, he had entire charge of the books, including the journal, cash book, day book and ledger. He was found dead in Philadelphia on March 1, 1910, and an audit of the books kept by him showed that he had, during his employment as book-keeper, defrauded the corporation of about $50,000. The suit was begun as a first-class case based on an implied contract, and the claim filed covered the period not barred by the Statute of Limitations. Remittances by checks and drafts received from customers passed through the hands of Walsh, and he entered them upon the books and acknowledged their receipt. He paid bills, had charge of the bank account, transmitted funds to the traveling men and customers, and was given checks for large sums of money, payable to his order, to pay freight and other accounts and to buy money orders and supply cash for the petty cash drawer. During his employment as book-keeper he was sent every four or five days to the defendant to buy money orders for remittances by the plaintiff and was furnished with checks for that purpose drawn by the corporation through its proper officers, payable to his order, and he was furnished with a written list of the money orders to be purchased. Sometimes he

was given a check for part and cash for the remainder, and sometimes the check exceeded the total of the money orders. It was his duty to buy the money orders mentioned in the list with the funds provided and to bring back the money orders and whatever cash balance there might be if the checks exceeded the amount of the orders, and he always returned from the defendant's office with the proper money orders and the cash balance, if there was any. The one hundred checks and drafts sued for were remitted by customers and were drawn or indorsed payable to the order of the plaintiff and came into his hands, and upon them it was alleged that he forged the indorsement of the plaintiff and with them bought money orders. The defendant received the checks and drafts sued for and issued to the plaintiff three hundred and eighty-two money orders in exchange for them, all of which contained on their face, "Name of remitter, Hamlin's W. O. Co." Some of these orders were payable to the order of persons with whom the plaintiff never had any dealings, and others were payable to the order of traveling men or customers and bore the genuine indorsement of the payees and were charged to them on the books by Walsh, so that the plaintiff had the benefit of the latter orders. Other orders were payable to salesmen and customers, but Walsh disposed of them and did not charge the amounts to the salesmen or customers or credit them to the plaintiff. One hundred and twelve of the money orders were issued to traveling men and customers and were charged to them on the books, and two hundred and seventy were either payable to persons with whom the plaintiff never had any business or were not charged on the books or used for its benefit. The frauds of Walsh were covered up by falsifying his books of account. He began his forgeries as early as 1902 and continued until he left the plaintiff's employment. The checks and drafts were indorsed in this form, "Hamlin's Wizard Oil Co., J. A. Hamlin, President," or the signature appended was

that of L. B. Hamlin, president, or L. B. Hamlin, vice-president, L. B. Hamlin having become president after the death of J. A. Hamlin.

The plaintiff offered in evidence the one hundred checks and drafts, together with testimony that the indorsements thereon were not in the handwriting of the officers of the plaintiff appearing thereon but were in the handwriting of Walsh, and closed its case in chief. It is contended that the court was not authorized to direct a verdict because such evidence was not sufficient to establish a forgery, but plaintiff was bound also to prove that the officers, J. A. Hamlin and L. B. Hamlin, never authorized Walsh to sign their names or the name of the company for the purpose of indorsing the checks. It has been held that in a civil case evidence that an indorsement is not in the handwriting of the alleged indorser is *prima facie* sufficient to justify a judgment based on the fact that the indorsement is not a valid indorsement of the payee. (*Schroeder* v. *Harvey,* 75 Ill. 638.) The evidence established *prima facie* that the indorsements were not indorsements of the plaintiff.

The books were not honestly kept by Walsh and did not truthfully represent the accounts, but the defendant offered in evidence various entries in them to show that for the checks and drafts it had issued money orders which the plaintiff received and charged upon the accounts. By that means the defendant proved that one hundred and twelve of the money orders were so charged to the payees on the books, and on cross-examination of defendant's witness the plaintiff read other entries in the books, to which the defendant objected. There was no preliminary proof that the books were books of original entry and no objection was made on that account, but the entries were objected to because it appeared from the testimony that the books were not honestly kept. The defendant, in offering entries from the books, assumed that they were competent evidence of admissions by plaintiff, and having used them to establish

credits in its favor it could not be permitted to deny plaintiff the benefit of what appeared therein relating to the same subject matter. *Boudinot* v. *Winter,* 190 Ill. 394.

The plaintiff had the checks and drafts at the trial and offered them in evidence, and it is argued that it ought not to recover their amount, because the makers were still liable thereon, and should only recover some special damage between the time the checks and drafts were fraudulently disposed of and their return to the plaintiff. There was no evidence upon which this claim could be based since there was nothing tending to prove that the plaintiff owned the checks, and if the plaintiff did own them, the fact that it might have had actions against the drawers or some other indorser would not affect its right of action against the defendant.

The important question in the case is whether the negligence of the plaintiff which was proved would defeat the action. During the nine years when Walsh was in the employ of the plaintiff it never took any steps to ascertain the method by which he was conducting its business or whether his books were truthful and correct. No examination of his books or accounts to ascertain their correctness was made. The one hundred checks in question were cashed during a period of five years in accordance with a course of business that had continued for over nine years, and any examination of the books would have discovered the fact. He was given checks, payable to his order, to buy money orders, and indorsements on many of them showed that they were not used for that purpose. The checks and drafts received from customers were to be stamped for deposit and deposited in the bank to the credit of the plaintiff, and no attempt was made to see that the checks or drafts so received were deposited and the treasurer did not examine the bank balance during the time of Walsh's employment. Part of the checks were cashed in saloons or to persons with whom the plaintiff had no dealings, as shown

265 – 11

by the indorsements, and they were never examined by any officer of the company to find out what Walsh had done with the proceeds. The evidence tended to prove that the exercise of ordinary care, such as may be expected of business men, was not exercised, and by reason of failure to exercise such care Walsh was enabled to continue his forgeries and frauds.

While negligence is frequently defined as the failure to exercise that degree of care which ordinarily prudent persons are accustomed to exercise under like circumstances, it is an essential ingredient that it involves the violation of a legal duty, and where there is no legal duty to exercise care there is no negligence in law. The question, then, is whether the plaintiff owed the defendant a legal duty, on account of the relations of the parties, to exercise ordinary care for the safety of the defendant in dealing with the checks and drafts. The general rule is, that a person or corporation called upon to act upon the faith of a written instrument, including an indorsement of commercial paper, must ascertain its genuineness at his peril. The principle rests in public policy and has been universally considered necessary for the security of commercial transactions. In *Jackson Paper Manf. Co.* v. *Commercial Nat. Bank,* 199 Ill. 151, the court quoted with approval this statement: "No equitable considerations can be invoked to soften seeming hardships in the enforcement of the laws and rules fixing liability on persons handling commercial paper. These laws are the growth of ages and the result of experience, having their origin in necessity. The inflexibility of these rules may occasionally make them seem severe, but in them is found general security." The rule was enforced with all its rigor in *Shepard & Morse Lumber Co.* v. *Eldridge,* 171 Mass. 516, in which a customer whose checks had been collected under a forged indorsement was sued to compel him to pay the checks a second time. The checks had been mailed by the defendant to the plaintiff and received by

the plaintiff and afterward plaintiff's indorsements were forged by its own clerk and book-keeper, and it was held that the plaintiff was not precluded from recovering on the checks from the drawer because of negligence in not discovering, by an examination of its books, that the clerk had previously forged and collected many checks sent to it by its customers covering a period of two or three years. Another case in which the rule was emphatically stated is *People* v. *Bank of North America,* 75 N. Y. 547, which was a suit against a bank to recover for drafts payable to the order of the State treasurer, on which a clerk in his office had forged the treasurer's indorsements. The referee found that the acts of the clerk in indorsing and diverting from their proper use the drafts in suit were such that the exercise of ordinary care on the part of the treasurer would have discovered and prevented them. The court said that the defendant sought to base an estoppel against the plaintiffs on that finding, but held that plaintiffs were not estopped and that negligence was no defense. We have been referred to no decision conflicting in any way with these. In the case of *Dispatch Printing Co.* v. *National Bank of Commerce,* 109 Minn. 440, one who assumed to be an agent of the payee of checks wrote indorsements in the plaintiff's name, signed by himself in his own name as agent for the plaintiff.. The question was whether the person who made the indorsements had apparent authority to make them as agent of the plaintiff, and it was held that if the course of dealing between the agent and third persons was such as to justify them in believing that he possessed the requisite authority the plaintiff would be estopped from disputing it. That is a well established doctrine of agency. If one permits another to clothe himself or to be clothed with apparent authority to act as his agent, any person who has been induced to rely and act upon the appearance of authority can invoke the estoppel. That was the basis of the decision in *Bartlett* v. *First Nat.*

*Bank of Chicago,* 247 Ill. 490, where the plaintiffs knew their agent was drawing drafts against them with which to obtain money from the banks to pay for grain and was wrongfully indorsing ·the names of the payees upon the drafts, and permitted him to continue drawing and indorsing drafts without informing the banks who were handling the drafts of that fact. In this case there was no question of that kind. Walsh had no express authority and never assumed to indorse any checks or drafts as agent of the plaintiff. What he did was to sign, without authority, the names of officers of the corporation, and the plaintiff had no actual knowledge of the fact.

There is a rule which obtains between banks and depositors quite similar to that which is applied wherever accounts are rendered, and that rule is that depositors must exercise reasonable care in examining returned statements and canceled checks and give prompt notice of irregularities discoverable by such care. That rule is adopted so that the bank may not only be able to proceed promptly against guilty parties, but may be put on its guard and protect itself from similar fraud in the future. It cannot be applied in this case, where accounts were never returned to the plaintiff by the defendant and neither a statement of account nor vouchers were. ever returned. That the plaintiff was grossly negligent in the management of its affairs can scarcely be doubted, but under the law as declared by all the authorities that fact was not a defense.

There was no substantial error in ruling on the admission of evidence and none which could have affected the result. There was no controverted question of fact which it was necessary to submit to a jury, and the municipal court did not err in directing a verdict.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*