[No. 21134. Department Two.  July 9, 1928.]

CALIFORNIA STUCCO COMPANY OF WASHINGTON, *Respondent*, v. MARINE NATIONAL BANK, *Appellant*.[1]

[1] BANKS AND BANKING (23)—FRAUDULENT INDORSEMENT OF CHECK —LIABILITY OF PAYING BANK. A bank, cashing checks belonging to a depositor, a corporation, upon the fraudulent indorsement of an agent having no authority to indorse checks, and collecting the proceeds, due to the drawees, is liable as for a conversion.

[2] SAME (23). Want of an authority of a bank to collect the proceeds of checks payable to a corporation and wrongfully indorsed by an agent having no authority to indorse checks, does not relieve it of liability for collecting and appropriating the proceeds of the checks.

[3] BILLS AND NOTES (73-3)—CORPORATIONS (160)—CHECKS—FRAUD-ULENT INDORSEMENT—LIABILITY FOR PAYING BANK. Negligence of a corporation in entrusting an agent with the possession of a negotiable paper is no defense to the liability of a bank that takes the same on the agent's wrongful indorsement; since one taking negotiable paper does so at his peril.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered November 12, 1927, upon the verdict of a jury rendered in favor of the plaintiff by direction of the court, in an action on contract. Affirmed.

*George F. Hannan*, for appellant.
*Poe, Falknor, Falknor & Emory*, for respondents.

ASKREN, J.—Plaintiff brought this action to recover the amount of certain checks alleged to have been con-

'Reported in 268 Pac. 891.

verted by the defendant bank.  From a directed ver-
dict in plaintiff's favor upon which a judgment was
entered, this appeal was taken.

The facts of the alleged conversion are briefly as
follows: The respondent corporation, with its place
of business in Seattle, had in its employ one Culpep-
per, whose duties were that of bookkeeper and cashier
as well as salesman.  The bank account of the cor-
poration was kept in the Dexter Horton National
Bank, and all checks were required to be signed by a
Mr. Belcher, the corporation's president, or its secre-
tary, Mr. Paddock.  It appears that Culpepper also
countersigned the checks issued by the corporation,
but this was not required so far as the depository bank
was concerned, but was a method employed by the cor-
poration to be sure that such checks were entered upon
its books.  Culpepper's instructions required him to
deposit all checks belonging to the corporation in the
depository bank.  To this end, he was provided with
the customary rubber stamp reading:

"Pay to the Order of Ballard Branch Dexter Hor-
ton National Bank of Seattle.  California Stucco Co.
of Washington."

He had no authority to cash, endorse, handle or dis-
pose of the checks in any other manner.

Culpepper, however, decided to embezzle some of the
moneys of the corporation, and to this end adopted the
following scheme: The corporation had in its office
another rubber stamp reading: "California Stucco
Company of Washington."  This stamp was used for
marking goods, packages, etc., and was not intended
for use on checks.  Culpepper would take checks be-
longing to the corporation and affix this stamp on the
back and underneath it write "By Charles Culpepper."
Those checks were then presented by him to certain
retail establishments and cashed.  The money so

received was converted by him to his own use. The firms receiving the checks involved in this action all deposited them in the Marine National Bank of Seattle, and the proceeds were collected by that bank from the several banks on which they were drawn. When the corporation discovered these facts, it brought suit on the theory that the Marine National Bank, by collecting the proceeds of the checks had in law been guilty of conversion.

[1] The facts just stated are not in dispute, and we turn to the first point raised by appellant, namely, that the appellant was not liable, because it had no notice that Culpepper's endorsement was without authority. It seems to be contended that notice or knowledge of want of authority is the controlling feature in cases of this character. In support thereof appellant has cited *Hill Syrup Co. v. American Savings Bank & Trust Co.*, 133 Wash. 501, 234 Pac. 11, where we held not liable a bank which paid corporate checks drawn by the president of the corporation in favor of another corporation in which he had a controlling interest, on the ground that the bank had no notice of want of authority to draw the checks. The distinction between that action and this is quite obvious. There the checks were drawn by one having authority to draw the checks of the corporation, but did not have authority to draw the particular checks. This, however, was something that the bank in that action could not know. Its duty was to see that the check was drawn by one having authority to sign the corporation's checks, and nothing but a personal investigation would disclose whether each particular check was authorized by the corporation.

Here the endorsement was made by one having no authority, under any conditions, to endorse the checks belonging to the corporation. The bank stands in the

same position with regard to the endorsements as the stores where the checks were first cashed. The parties cashing them had no right to assume that, because Culpepper was employed by the California Stucco Company, he also had authority to endorse and cash its checks. If mere employment furnishes apparent authority to endorse checks, then no business would be safe.

The observation of the New York Court of Appeals in *Standard Steam Specialty Co. v. Corn Exchange Bank,* 220 N. Y. 478, 116 N. E. 386, is especially illuminating. In that case it appeared that a bookkeeper whose powers were limited to placing a rubber stamp endorsement on the back of checks belonging to the corporation and depositing them, took several checks, endorsed them in her own handwriting, cashed them with third parties and kept the proceeds. The parties who cashed the checks presented them to the defendant bank, which was not the depository bank. The bank collected the checks from the drawers. Neither the parties who first cashed the checks nor the bank had any notice of the fact that the endorsements were without authority or were made for the bookkeeper's personal benefit. Said the court:

"Any person taking checks made payable to a corporation, which can act only by agents, does so at his peril, and must abide by the consequences if the agent who indorses the same is without authority, unless the corporation is negligent (*People v. Bank of North America,* 75 N. Y. 547), or is otherwise precluded by its conduct from setting up such lack of authority in the agent as in *Phillips v. Mercantile Nat. Bank of N. Y.,* 140 N. Y. 556, 35 N. E. 982, 23 L. R. A. 584, 37 Am. St. Rep. 596.

"If the original indorsement was authorized, the diversion of the funds after indorsement would not make it a forgery; but, if the original indorsement

was unauthorized, parties dealing with the wrongdoer and innocent parties alike were bound to know the lack of the agent's authority to convey title away from the true owner to any one. Cohen had power to make deposits in the Greenwich Bank; she had no power to collect the checks or even to deposit them elsewhere for collection. She was a mere conduit through which the checks received by her employer passed to her employer's bank for collection. The right to indorse was a mere incident to the authority to deposit. Banking customs imply such authority to indorse *pro forma* from the right to make the deposit to the credit of principal's account, and it may be said that the specific authority to place this restrictive indorsement on the checks added nothing to Cohen's authority to deposit the checks. The indorsement was a necessary and customary incident to the act of making such deposits. The business man who authorizes his clerk to take his checks to his bank for deposit does not vest in her so dangerous a power as to preclude him from setting up her lack of authority if she indorses his name in blank and innocent persons cash the checks for her without inquiry. The stringent rules of agency and the arbitrary rules of the law of negotiable paper alike protect the principal from such unauthorized acts. If greater authority has been conferred, expressly or by implication, or if the principal has been negligent or has ratified the conduct of his agent, the law will not shield him; but here the facts are stipulated, and the only question of law presented is whether the indorsement of the checks by the plaintiff's agent was without its authority, and therefore a forgery. Precedent and the custom of merchants alike indicate that the transaction was not a mere diversion of funds and it follows that the plaintiff may recover."

To the same effect see *United States Portland Cement Co. v. United States Nat. Bank of Denver*, 61 Colo. 334, 157 Pac. 202, and *Schaap v. State Nat. Bank of Texarkana*, 137 Ark. 251, 208 S. W. 309, and cases there cited.

The rule has been well stated in a note to 31 A. L. R., p. 1063, as follows:

"According to the general rule, a bank or other corporation, or an individual, who has obtained possession of a check upon an unauthorized or forged endorsement of the payee's signature, and who collects the amount of the check from the drawee, is liable for the proceeds thereof to the payee or other owner, notwithstanding they have been paid to the person from whom the check was obtained."

The note is attached to the well-considered case of *Allen v. Mendelsohn & Sons,* 207 Ala. 527, 93 South. 416, 31 A. L. R., p. 1063.

The principle deducible from these premises and the universal weight of authority is that neither the good faith of the bank or its lack of notice are material in cases of this character, and we conclude that this point is not well taken.

[2] Complaint is also made that respondent should have instituted suit against the makers of the checks upon the theory that the appellant bank had no authority to collect, and the checks, so far as respondent is concerned, have not been paid. But whatever rights respondent possesses, whether it be to sue the makers of the checks, the appellant bank, or the parties who originally cashed the checks is not material here. The question more properly is: Has the respondent a right to sue the appellant? The cases cited support this authority abundantly, and they are based upon the theory that the respondent may ratify the collection of the checks, but deny that the appellant bank has any title to the proceeds thereof.

In *United States Portland Cement Co. v. United States National Bank of Denver, supra,* this precise point is disposed of as follows:

"It is conceded that the drawee bank would have a cause of action against the defendant in error for

the amount of these checks. This, upon the theory that they had never been paid and that the plaintiff could still recover the amount from the maker of the check, and that the maker in turn could prevent the drawee bank from charging the amount to his account. If the plaintiff in error had authorized the defendant in error bank to make these collections for it, the drawee bank could not recover back from the defendant in error bank, and the maker of the check could not prevent the payee bank from charging the amount to its account. When the plaintiff in error ratified this collection, the same result follows, and the defendant in error bank, not having accounted to it for the money (if the allegations of the complaint are true) it has its cause of action therefor.''

[3] Error is also urged because the trial court refused to admit evidence concerning what is termed negligence upon the part of the corporation in failing to strictly supervise, watch and control the actions of Culpepper. Negligence is no defense to an action of this character. Culpepper had no right to endorse the checks or accept the proceeds. It was not claimed that there was any evidence of even apparent authority other than his mere employment. Can one who takes from a servant that which belongs to the master be heard to say upon demand by the master for its return, ''You were negligent in trusting your servant''?

The rule is that one who acts upon the endorsement of negotiable paper must ascertain its genuineness at his peril. *Independent Oil Men's Ass'n v. Fort Dearborn Nat. Bank,* 226 Ill. App. 570; *Schmidt v. Garfield National Bank,* 64 Hun (N. Y.) 298, 19 N. Y. Supp. 252.

Other assignments of error have been carefully considered and found to be unavailing to the appellant.

The judgment is affirmed.

Holcomb, Parker, and Beals, JJ., concur.