## ATLANTA & ST. A. B. RY. CO. v. BARNES.

### No. 8508.

Circuit Court of Appeals, Fifth Circuit.
April 14, 1938.

Arthur G. Powell, of Atlanta, Ga., and Howard S. Bailey, of Chipley, Fla., for appellant.

William Fisher, of Pensacola, Fla., and J. M. Sapp and Joseph W. Bailey, both of Panama City, Fla., for appellees.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The motion for rehearing earnestly combats the conclusions of the penultimate paragraph of the opinion; and asserts that we have misconstrued the bill as claiming the proceeds of the credit customers' checks rather than damages for their conversion. It cites Louisville & N. R. Co. v. Citizens' & Peoples' Nat. Bank, 74 Fla. 385, 77 So. 104, L.R.A.1918C, 610; Allen v. M. Mendelsohn & Son, 207 Ala. 527, 93 So. 416, 31 A.L.R. 1063; Merchants' Bank v. National Cap. Press, 53 App.D.C. 59, 288 F. 265, 31 A.L.R. 1066; California Stucco Co. v. Marine Nat. Bank, 148 Wash. 341, 268 P. 891, 67 A.L.R. 1531; and National Union Bank v. Miller Rubber Co., 148 Md. 449, 129 A. 688. The first-named case was against the drawee bank, who on an unauthorized indorsement paid a check, took credit with its customer for it, and delivered it to him. A suit by the true owner for the conversion of his check was upheld. Only two of the checks here involved payable to the Railway Company were drawn against the sued bank, dated May, 1932. At that time the evidence authorizes the finding that Barnes was expressly held out as having authority to indorse and collect cash for all checks payable in Panama City. The other cases cited sharply distinguish suits brought against a bank which is not the drawee but takes a check on a forged or unauthorized indorsement and collects it. They with their A.L.R. annotations tend to show that the true owner may either sue the collecting bank at law as for a conversion, or may ratify the collection and sue for the proceeds as money had and received for his

use, or when an agent or other trustee is concerned may treat the matter as involving a trust and seek an account in equity. The ratification of the collection by suing for the proceeds by no means waives the owner's right to them. It operates to cut off recourse against the drawer of the check on the original demand, and to supply the authority to collect which the bank lacked. There is an election to treat the money as standing in place of the check. Authority to indorse is no longer in question, but the right to the money is.

■ In the present case Barnes was known to be an agent, and that the checks belonged originally to the Railway Company. They were known to be for freight. But Barnes had full authority to collect all freight money, even as to the bills due by the credit customers. The petition states, and we understand the evidence to be, that he "was allowed to accept in payment thereof checks." He could also accept money from them. Now as to these checks we have a situation by ratification in which the bank rightly has the proceeds in money and pays it over to an agent who has full authority in fact to accept freight money for the company. It would seem that if the bank in good faith, and believing that there was no wrong in Barnes' conduct, pays the money over to him either in cash or by temporary credit in his account, it should be discharged. Especially is this so where there is ostensible authority to indorse some checks in the name of the Railway Company and no knowledge by the bank that checks from the credit customers stand differently from others. But the question is no longer one of the agent's authority to indorse checks, but of his authority to receive money for the company. The bank's liability reverts to the question of its good faith under all the circumstances known to it.

■ We have carefully reconsidered the petition, and have no difficulty in holding that it shows an election to claim the proceeds of the checks as a trust fund traceable in equity. One of its first allegations is that all that Barnes received was "received in a fiduciary capacity and in trust for the plaintiff." It is alleged that he had "retained and misappropriated the plaintiff's money received by him in his fiduciary relation as plaintiff's agent" in a sum of $25,801, the whole amount in controversy. The bank was then charged with having aided and abetted in "the misappropriation of the plaintiff's money," and this was done by collecting checks and drafts and "paying the proceeds to said Barnes in cash or by crediting to his personal bank account." The petition further undertook to trace the money which Barnes received into the purchase and improvement of certain real estate, and to charge it with a lien, which lien it alleged would go to the bank if the bank repaid the money. The prayers were for an accounting of money and a tracing of it, and for the balance of the money still to the credit of Barnes in the bank. There is but one mention of conversion in the long bill, to wit, "Thus the defendants Barnes and said banks converted to their use and benefit said checks and drafts listed in said tables and took for their use and benefit the proceeds thereof which belonged to the plaintiff without plaintiff's knowledge and consent." So the proceeds are at last claimed which resulted from the conversion. The bill is not a suit for conversion of checks in which the plaintiff would have no concern with the proceeds, but is one for an account and tracing of the proceeds of checks, and is to be governed by equitable principles rather than the technical rules of conversion.

As to the last paragraph of the original opinion, our attention is called to the fact that the transaction dealt with occurred in March, 1933, instead of March, 1932. That correction should be made. Attention is also called to a notation appearing on the deposit slip: "Credit memo offset charges March 4." No witness explains the actual transaction or what these words mean. They seem to say that what appears as a deposit slip is a mere credit memorandum to offset for some unstated reason the charges on March 4th of $119.15. The offset was actually entered March 16th, and thus accomplished. That anything more is due is only speculative. We are still unable to say that the books are wrong.

Motion denied.