**R. MARS, THE CONTRACT CO.,**
Appellee,

v.

**MASSANUTTEN BANK OF STRASBURG,** Strasburg, Virginia,
Appellant.

**No. 8174.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 18, 1960.

Decided Dec. 14, 1960.

James H. Michael, Jr., Charlottesville, Va. (Richard S. Wright, Jr., Woodstock, Va., and Michael & Dent, Charlottesville, Va., on brief), for appellant, and Robert Rolnick, Washington, D. C. (A. C. Epps, William R. Shands, Jr., Richmond, Va., Christian, Barton, Parker & Boyd, Richmond, Va., and Danzansky & Dickey, Washington, D. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

This action was instituted by R. Mars, The Contract Company, hereafter called "Company," the payee of certain checks, against Massanutten Bank of Strasburg, hereafter called "Bank," to recover the proceeds of those checks which were accepted by the Bank for deposit and credited to the individual account of one Spiggle, an employee of the Company, upon Spiggle's forged endorsement. A trial was had without a jury before the United States District Court for the Western District of Virginia which held that negligence arising from the alleged lax business conduct of the Company, forger's employer, would not afford the Bank a valid defense for acceptance of the fraudulent endorsements, and entered judgment in favor of the Company. Under the facts as found we perceive no error. A brief recital of the facts and references to applicable authorities follow.

In January 1958, the Company employed one Spiggle as its accounts receivable bookkeeper. The Company's collections, by cash or check, were delivered to the cashier's desk located at the Company switchboard. When they arrived, the cashier would prepare a "posting receipt" for each payment so the amount could be credited to the individual customer account. Spiggle's responsibility upon the preparation of this receipt was to post the credit to the proper account. In addition to the individual accounts receivable, Spiggle was in charge of the over-all accounts receivable control ledger, and it was his duty to periodically balance the sum of the individual accounts with the control account. In March 1958, the posting of the accounts receivable was not current and to facilitate the credit of payments to the accounts all checks were given directly to Spiggle for notation of payment on the individual ledger cards, the actual

posting to the account to be completed whenever the workload would permit. At various times during the day Spiggle assumed the duties of relief cashier and switchboard operator, at which times he had direct access to all checks received at the cashier's desk and to all incoming mail.

In May 1958, Spiggle initiated a series of thefts of checks payable to the Company, accomplished in the following manner: When a check was delivered by the cashier to Spiggle for notation of payment on the ledger card, he would destroy the "posting receipt" and retain the check in his possession; he would then alter the over-all accounts receivable control ledger to cover the theft; the check would then be endorsed by means of a rubber stamp bearing the words "R. Mars, The Contract Company"; thereunder, but over his own signature, Spiggle would write "For Deposit only, Massanutten Bank of Strasburg"; the stolen checks would then be forwarded along with his regular weekly pay check of $62 to the Bank which, in turn, collected the proceeds of the checks from the drawee banks and credited Spiggle's account with the total deposit. Between May 1, 1958, and August 15, 1958, Spiggle had, in this manner, fraudulently endorsed and appropriated customers' checks payable to Company in the aggregate amount of $11,668.93.

On June 4, 1958, the executive vice-president of the Bank wrote Spiggle at his residence address, acknowledging receipt of the first of the fraudulently endorsed checks and requesting a letter, to be signed by a proper Company officer, authorizing such endorsements. On June 7, Spiggle composed and typed a reply letter of authorization on Company stationery and forged the signature of Robert Mars, the Company president, thereto. Neither Mr. Mars nor the Company, through any officer, had any knowledge of the Bank's letter of June 4 or of Spiggle's fraudulent reply of June 7. Upon receipt of the forged authorization, the Bank's executive vice-president dictated to his stenographer a letter of acknowl-

edgment which was directed to Robert Mars at the Company's business address. The stenographer mailed this letter, along with a copy addressed to Spiggle, by first-class mail, in an envelope bearing the return address of the Bank. Both Robert Mars and the Company's comptroller testified they had never received or seen the original of this letter and it was not in the Company files. It was shown that the letter was not returned in the mails to the Bank.

At the trial the Bank raised the defenses of (1) authorization to accept such endorsements granted by the Company letter of June 7; (2) estoppel, predicated on the Bank's June 10 letter acknowledging receipt of the June 7 letter; and (3) laxity of supervision of employees by Company, constituting the proximate cause of its loss. The first of these defenses was abandoned when it was shown that the June 7 letter was itself forged by Spiggle and the second was of no avail when the Court found as a fact that the June 10 letter had not been received by the Company addressee. The Court held the third defense to be insufficient to bar the plaintiff's recovery, stating:

"It must be said that the testimony shows a marked degree of laxity in the conduct of the business office of the plaintiff, particularly in the handling of payments on receivable accounts. All incoming mail was delivered to the office in an unlocked pouch and was apparently accessible to a number of the employees, including Spiggle. The posting of amounts received on the payment of accounts was carelessly handled; balances on the accounts were run rarely and at irregular intervals and their accuracy was not verified by any responsible officials. However, no matter how careless these practices may be considered when judged by the standards of a well conducted business, none of them had any immediate connection with the forgeries committed by Spiggle. The general rule is that the laxity of an employer

in supervision of the performance of his duties by an employee does not afford a defense to a bank which has accepted checks on an endorsement forged by the employee. See Hamlin's Wizard Oil Co. v. U. S. Express Co., 265 Ill. 156, 106 N.E. 623; California Stucco Co. v. Marine Nat. Bank [148 Wash. 341], 268 Pac. 891; 67 A.L.R. 1531."

The basic liability of a bank with respect to the acceptance of checks for deposit bearing an endorsement of the payee forged by his employee has been well stated in California Stucco Co. v. Marine Nat. Bank, 1928, 148 Wash. 341, 268 P. 891, 892, 67 A.L.R. 1531, wherein the court stated:

"Here the indorsement was made by one having no authority under any conditions to indorse the checks belonging to the corporation. The bank stands in the same position with regard to the indorsements as the stores where the checks were first cashed. The parties cashing them had no right to assume that because Culpepper [the forger-employee] was employed by the California Stucco Company he also had authority to indorse and cash its checks. If mere employment furnishes apparent authority to indorse checks, then no business would be safe.

"The observation of the New York Court of Appeals in Standard Steam Specialty Co. v. Corn Exchange Bank, 220 N.Y. 478, 116 N.E. 386, L.R.A.1918B, 575, is especially illuminating. In that case it appeared that a bookkeeper whose powers were limited to placing a rubber stamp indorsement on the back of checks belonging to the corporation and depositing them took several checks, indorsed them in her own handwriting, cashed them with third parties, and kept the proceeds. * * * The bank collected the

checks from the drawers. Neither the parties who first cashed the checks nor the bank had any notice of the fact that the indorsements were without authority or were made for the bookkeeper's personal benefit. Said the court: 'Any person taking checks made payable to a corporation which can only act by its agents, does so at his peril, and must abide by the consequences if the agent who indorses the same is without authority, unless the corporation is negligent * * * or is otherwise precluded by its conduct from setting up such lack of authority in the agent' * * *." See Annotation 1930, 67 A.L.R. 1535.

■ When an instrument is offered for negotiation or deposit, the primary obligation to determine whether there is a forged endorsement therefore rests on the bank, and hence negligence of the payee effective to bar recovery must be such as *directly* and *proximately* affects the conduct of the bank, contributing to and inducing its acceptance of the forged endorsement itself. Hensley-Johnson Motors v. Citizens Nat. Bank, 1954, 122 Cal.App.2d 22, 264 P.2d 973.

■ In the instant case, there were no dealings directly between the Company and the Bank. The Company did nothing which would constitute a representation to the Bank that Spiggle was authorized to endorse checks in the manner in which they were endorsed and to deposit them to his personal account. As stated in California Stucco Co. v. Marine Nat. Bank, supra, "If mere employment furnishes apparent authority to indorse checks, then no business would be safe." The unbusinesslike conduct of the Company's affairs and the lack of careful supervision of its employees were factors too remote from the Bank's acceptance of forged endorsements to be the proximate cause of loss resulting from such endorsements.

Affirmed.