416 So.2d 1358 (1982)
PARGAS, INC., et al., Plaintiffs,
Hartford Accident & Indemnity Company, Plaintiff and Appellant,
v.
ESTATE of Leonard Parvin TAYLOR, et al., Defendants and Appellees.
No. 82-74.
Court of Appeal of Louisiana, Third Circuit.
July 2, 1982.
*1360 Gist, Methvin, Hughes & Munsterman, John W. Munsterman, Alexandria, for plaintiff and appellant.
Gold, Little, Simon, Weems & Bruser, Donald Sharp, Alexandria, for defendants and appellees.
Before FORET, SWIFT and DOUCET, JJ.
DOUCET, Judge.
This is an employee embezzlementcommercial paper case. During the course of his employment as a district manager for Pargas, Inc., Leonard Taylor diverted checks, beginning in April of 1975, with his employer named as payee, into his personal account at Rapides Bank and Trust Co. in Alexandria, Louisiana. He did so by endorsing the checks with a rubber return address stamp, imprinted as follows:

PARGAS

Post Office Box 1887

Alexandria, Louisiana 71301
Some of the checks were also endorsed with his personal signature. Rapides Bank never obtained a corporate resolution authorizing Mr. Taylor to endorse checks on behalf of Pargas nor was there any authorization received for deposit of said checks into Taylor's personal account.
A company audit, conducted in 1977, revealed the embezzlement and Taylor subsequently confessed his embezzlement in the sum of $28,262.59 and agreed to reimburse his employer. Thereafter Taylor died, apparently from the result of suicide.
Pargas was insured against loss by theft or embezzlement by a policy issued by Hartford Accident & Indemnity Co. The claim between insured and insurer was subsequently settled by the payment of $62,000 to Pargas, Inc. and Hartford obtained an assignment and subrogation of the rights of Pargas. Thereafter Hartford brought this action against Rapides Bank & Trust Co. for their wrongful honor of the forged instruments, and against the Estate of Leonard Taylor for his embezzlement. The claim against Rapides Bank involves 64 checks totalling $17,805.59 payable to the order of Pargas, Inc. but deposited to the personal account of Mr. Taylor at the Rapides Bank. As suit was filed on November 28, 1978, appellant correctly concedes that those checks deposited by Mr. Taylor to his personal account prior to November 28, 1975 are not at issue as the three-year statute of limitations set forth in R.S. 10:4-406(4) is applicable thereto.
The trial judge dismissed the claims of Hartford against Rapides Bank on the grounds that Taylor had the implied authority to endorse checks on behalf of Pargas, and there was no evidence that the bank had actual knowledge that the deposit of such funds into Taylor's personal account constituted a breach of his fiduciary duties. The trial judge further noted, that as a matter of equity, the loss should be borne by the party employing the dishonest employee as they were in a superior position to prevent the loss by auditing his activities. From that judgment Hartford appeals.
This appeal requires a determination of the legal rights and responsibilities of two *1361 relatively innocent parties who were victimized by the criminal activities of the employee Taylor, who forged the payee's endorsement. (The claims of plaintiff against the Succession of Leonard Taylor are not presently before this court.) The precise question appears to be one of first impression in Louisiana since adoption of the relevant chapters of the Uniform Commercial Code. Accordingly we look to the law of other jurisdictions.
LSA-R.S. 10:3-419(1) provides that "when a person pays an instrument on a forged endorsement, he is liable to the true owner." The measure of the drawee's liability is the face amount of the instrument. R.S. 10:3-419(2). The third paragraph of said section provides that a depository or collecting bank, who is in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative who dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable to the true owner beyond the amount of any proceeds remaining in his hands.
Defendant contends that it is absolved of liability by virtue of the following provisions of LSA-R.S. 10:3-304:
(2) The purchaser has notice of a claim against the instrument when he has knowledge that a fiduciary has negotiated the instrument in payment of or as security for his own debt or in any transaction for his own benefit or otherwise in breach of duty.
* * * * * *
(4) Knowledge of the following facts does not of itself give the purchaser notice of a defense or claim. (emphasis added)
* * * * * *
(e) that any person negotiating the instrument is or was a fiduciary.
In support thereof the bank contends the above provisions require actual knowledge of the fiduciary's breach of duty before it can be held liable. The remaining defense, related thereto, is that Taylor had either apparent or implied authority to endorse the checks.
We find that the purchaser Rapides Bank had knowledge, either actual or implied, that Taylor was negotiating the instrument for his personal benefit.
The Uniform Fiduciaries Act did away with the payee's liability for negligence in failing to investigate the use to which the fiduciary was putting the funds, and substituted a new test: For the payee to become liable under this Act it must be found either that it had actual knowledge of the misappropriation or that it acted in bad faith. Colby v. Riggs National Bank, 67 App.D.C. 259, 92 F.2d 183, 114 A.L.R. 1065 (1937); Maryland Casualty Company v. Bank of Charlotte, 340 F.2d 550 (U.S. App. 4th Cir. 1965). In the latter aforementioned case it was held that the payee bank was liable to the corporation's surety due to its application of checks, payable to the bank and drawn on the corporation's accounts in other banks, to the secretary's personal account and outstanding loans, notwithstanding the existence of a corporate resolution protecting the bank from liability for assisting a fiduciary in misappropriation.
We take judicial notice of the fact that checks payable to a corporation are not normally endorsed in blank by use of a return address stamp and delivered to third parties. The collecting bank should have inquired as to the reason and authority for the deposits of corporate checks into Taylor's personal account. However, the evidence clearly shows that Rapides Bank never obtained a corporate resolution authorizing Mr. Taylor to endorse checks on behalf of Pargas nor was there any authorization received for deposit of corporate checks into Taylor's personal account. Indeed, Rapides Bank made no inquiry whatsoever. Not only does such conduct fall below reasonable commercial standards, but it also violates defendant's internal procedures which the record discloses to require bank employees to obtain a resolution from the principal prior to acceptance of such checks. Mr. John Leavines, a senior vice-president and long-time employee of the Rapides Bank *1362 testified that it was the standard operating procedure of the Rapides Bank to obtain a resolution authorizing someone to execute checks on behalf of the corporation when opening a corporate account. However none was obtained from Pargas, Inc. It was commercially unacceptable for the bank to remain passive, disregard and refuse to learn facts readily available. They cannot now seek refuge under the fiduciary proviso of R.S. 10:3-304(4)(e).
Defendant Rapides Bank also contends that Taylor had the apparent authority to conduct the banking transactions involved on behalf of Pargas. In support thereof Rapides Bank emphasizes Taylor's managerial status, with its accompanying duties, and his use of the rubber stamp. However, it is well established that the mere fact that an employee has managerial status and is in charge of a company's office does not entitle third persons to assume that he has authority to execute or endorse negotiable paper belonging to his employer. Guillory v. Braswell Motor Freight Lines, Inc., 256 So.2d 646 (La.App. 2nd Cir. 1972), writ ref. 260 La. 1134, 258 So.2d 381 (1972); Massey-Ferguson, Inc. v. Fargo National Bank, 270 F.Supp. 227 (N.D.1967), aff'd. 400 F.2d 223 (8th Cir. 1968); Mott Grain Co. v. First National Bank & Trust Co., 259 N.W.2d 667 (N.D.1977). If mere employment furnished apparent authority to endorse checks no business would be safe. There was no apparent authority to justify the actions of Rapides Bank.
The judicially created doctrine of apparent authority has two requirements: (1) the principal must make some form of manifestation to an innocent third party; and (2) the third party must rely reasonably on purported authority of the agent as a result of the principal's manifestations. Lilliedahl & Mitchell, Inc. v. Avoyelles Trust and Savings, 352 So.2d 781 (La.App. 3rd Cir. 1977). Here, assuming defendant can rightly be considered an innocent party entitled to the doctrine's protection, there was no manifestation whatsoever by the principal. The furnishing of a rubber stamp bearing the name and address of the principal, a commonplace occurrence, did not cloak Taylor with apparent authority to endorse corporate checks and receive payment for them. Whatever appearance of authority the stamp created arose from the actions of Taylor himself and not Pargas. Furthermore, the reliance of Rapides on the authority of Taylor to apply corporate checks to his personal benefit was not reasonable under the circumstances presented.
As stated in Lilliedahl, supra, "Banks stand in a peculiarly unique place in the business world. They are entrusted with huge sums of money by their depositors and must proceed cautiously when dealing with deposited sums. We also note that it is axiomatic that a corporation can only act through individuals and these individuals must be given legal power to act on behalf of a corporation." These principles apply with equal force to the case at bar.
Nor is this a case for application of UCC § 3-405 involving issuance of a negotiable instrument induced by an imposter as clearly Taylor was not impersonating anyone. The imposter rule does not extend to a false representation as to agency. See: Annot. 92 A.L.R.3d 608. Likewise this is not a case of a fictitious payee.
Furthermore, we find that Pargas did not ratify the unauthorized endorsement of Taylor. It is well established that in order for ratification to occur the person to be bound must, with full knowledge of all material facts, express an intent to ratify the unauthorized act. Clearly Pargas was unaware of Taylor's embezzlement and due to the employee's conniving control of the books, his employer was unlikely to readily discover same. The account was in Taylor's name, thus the corporate bank statements would not have disclosed the fraud. The general rule is that the laxity of an employer in supervision of the performance of employees' duties does not afford a defense to a bank which has accepted checks on an endorsement forged by the employee as the primary obligation to determine whether there is a forged endorsement is rightly placed on the bank whose *1363 business is banking. See: California Stucco Co. v. Marine National Bank, 148 Wash. 341, 268 P. 891 (1928); Standard Steam Specialty Co. v. Corn Exchange Bank, 220 N.Y. 478, 116 N.E. 386; Hamlin's Wizard Oil Co. v. U.S. Express Co., 265 Ill. 156, 106 N.E. 623; Annot. 87 A.L.R.2d 638.
The courts have uniformly rejected similar arguments urged on behalf of banks in the position of appellee. The established law throughout the country is that the payor bank must pursue the forger and bear any ultimate loss under such circumstances.
In Massey-Ferguson, Inc. v. Fargo National Bank, 270 F.Supp. 227 (N.D.1967), an action by the corporation to recover proceeds of checks, made payable to corporation which were accepted by the bank upon forged endorsement by the employee district manager, it was held that the bank could not establish a custom and confer authority upon an unauthorized agent by recognizing the agent's acts over a period of time and then relying upon such custom as conferring apparent authority in absence of the employer's knowledge of the custom. The court therein further held that the doctrine of apparent authority was inapplicable, stating:
"... During the entire period of time during which the checks were accepted the only information in the bank's possession concerning Geering's authority was knowledge of his employment by Massey-Ferguson as district manager. Even this meager knowledge was furnished by Geering. The mere fact that an employee has charge of a company's office does not entitle third persons dealing with the employee to assume that he has the authority to execute or endorse the company's negotiable paper." (citations omitted)
The court in Massey-Ferguson relied in part on Gresham State Bank v. O and K Construction Co., 231 Or. 106, 370 P.2d 726, wherein it was stated:
"In the ordinary case it seems proper that the negligent payor, rather than the negligent principal, should bear the loss caused by an agent's unauthorized endorsement of his principal's check. An important factor supporting this conclusion is the relative ease with which the payor, having knowledge of the agency, can ascertain the agent's authority, as compared with the difficulty with which an employee's dishonesty may be detected by his employer. The employer must overcome the obstacles which the employee devises for the very purpose of making it difficult to detect the defalcations. Certainly under the circumstances of the present case, it was more reasonable for the officers of the O and K Construction Company ... to assume that their employee was honest than it was for Zimmerman... to assume that he had the authority to endorse checks and receive payment in cash for no ostensible corporate purpose."
The court in Gresham went on to hold that even though the employer was negligent in failing to scrutinize its records over a 3-year period during which the defalcation occurred, such did not preclude the corporate payee from prevailing on the ground that its negligence substantially contributed to the forgery as the payor failed to inquire as to the employee's authority to endorse checks thereby failing to act in accordance with reasonable commercial standards of its business.
The employer in Atlantic Trust Co. v. Subscribers to Auto. Ins. Exchange, Keystone Indem. Co., 150 Md. 470, 133 A. 319 (1926) had employed a resident manager who opened an account in his own name with defendant bank, and during a period of several months endorsed 36 checks made payable to his principles by using a rubber stamp he found in the office bearing plaintiffs' business name, and writing his own name after the affixing of the stamp, describing himself as resident manager. The bank honored these checks and deposited the proceeds thereof to the private account of such employee, who then checked the moneys out of such account and appropriated them to his own use (as here). Upon discovery of the forgeries, the plaintiffs brought suit against the collecting bank. *1364 In allowing plaintiffs recovery for the amount of the checks against defendant bank, the court stated that the mere fact that the employee held the title of resident manager did not constitute a delegation of apparent authority to endorse checks payable to plaintiffs, and stated that the controlling rule was that a principal can be bound by the acts of another as his agent only so far as the principal empowers or permits the agent to represent him, and if a bank has been misled by an appearance of authority not known and acquiesced in by the principal, and so has accepted unauthorized endorsements, the bank is answerable for the loss. Annot: CheckUnauthorized Indorsement, 100 A.L.R.2d 100, A.L.R.2d 670.
Under similar circumstances, the court in Belmar Trucking Corp. v. American Trust, 65 Misc.2d 31, 316 N.Y.S.2d 247 (1970) stated:
"It was a palpable excess of authority and any person taking the paper was bound to inquire as to the power of the agent so to contract ... `No businessman of common intelligence could take these checks in good faith, and without suspicion or notice of this fraud.'"
In Rochester & C.T.R. Co. v. Paviour, 164 N.Y. 281, 58 N.E. 114, where the fact situation, although different, was related, the court made this pertinent observation:
"One who suspects, or ought to suspect, is bound to inquire, and the law presumes that he knows whatever proper inquiry would disclose. While the courts are careful to guard the interests of commerce by protecting the negotiation of paper, they are also careful to guard against fraud by defeating titles taken in bad faith, or with knowledge, actual or imputed, which amounts to bad faith, when regarded from a commercial standpoint."
In R. Mars, The Contract Co. v. Massanutten Bank of Strasburg, 285 F.2d 158, 87 A.L.R.2d 633, (U.S.App. 4th Cir. 1960), the corporate payee of a number of checks sought recovery of the proceeds of the checks, which had been accepted by the defendant bank for deposit and credited to the individual account of an employee of the corporation upon the employee's forged endorsements. In effecting his scheme, the employee took advantage of unbusinesslike conduct of the corporation's affairs and lack of careful supervision of its employees. The corporation had no direct dealings with the bank and did nothing constituting a representation to the bank that the employee was authorized to endorse the checks in the manner in which they were endorsed. Held: any negligence on the part of the corporation was too remote from the bank's acceptance of the forged endorsements to be regarded as a proximate cause of the resulting loss. Accord: Massey Ferguson, Inc. v. Fargo National Bank, supra.
See also: Salsman v. National Community Bank of Rutherford, 102 N.J.Super 482, 246 A.2d 162 (1968); National Bank of Georgia v. Refrigerated Transport Co., Inc., 147 Ga.App. 240, 248 S.E.2d 496 (1978); E. L. Von Gohren v. Pacific National Bank of Washington, 8 Wash.App. 245, 505 P.2d 467 (1973), wherein it was held that failure to inquire into the validity of the endorsements in question precluded the bank from asserting the defense of commercial reasonableness as a matter of law; SheriffGoslin Co. v. Cawood, 91 Mich.App. 204, 283 N.W.2d 691 (1979); and cases cited therein.
Appellees' reliance on Peoples Cotton Oil Co., Ltd. v. Hunt Foods & Industries, Inc., 147 So.2d 687 (La.App. 4th Cir. 1962), is misplaced for two equally valid reasons: the case pre-dated Louisiana's adoption of the relevant U.C.C. provisions, and the facts are inapposite. Similarly, Ashley-Hall Interiors, Ltd., Inc. v. Bank of New Orleans, 389 So.2d 850 (La.App. 4th Cir. 1980) is inapposite as it involved substantial employer negligence contributing to the employee's raising checks drawn on the corporate account, payable to the employee.
We find no case on point reaching a contrary result. This is rightly so inasmuch as the Uniform Commercial Code was, of course, designed to "promote uniformity of the law among the various jurisdictions." LSA-R.S. 10:1-102(2)(c). Provisions of the *1365 code should be construed so that rights and liabilities of the parties, absent serious factual dispute, are ascertainable without resort to expensive and delaying litigation over each item which might be paid on an unauthorized signature or endorsement, thereby facilitating commercial transactions.
For the reasons assigned the judgment appealed from denying the claims of Hartford Accident & Indemnity Company against Rapides Bank & Trust Co. is reversed and judgment is granted in favor of Hartford Accident & Indemnity Co., and against Rapides Bank & Trust Co., in the sum of $17,805.59, with interest from date of judicial demand. Costs are to be taxed against appellee.
REVERSED AND RENDERED.