502 So.2d 1174 (1987)
COLLINS DOZER SERVICE, INC., Plaintiff-Appellee,
v.
Sidney GIBBS, et al., Defendants-Appellants.
No. 85-856.
Court of Appeal of Louisiana, Third Circuit.
February 19, 1987.
Writ Denied April 20, 1987.
Henry H. Lemoine, Jr., Pineville, for defendants-appellants.
Gahagan and Gahagan, H.C. Gahagan, Jr., Natchitoches, for plaintiff-appellee.
Chris J. Roy, Alexandria, for defendants-appellees.
Before FORET, STOKER, LABORDE and KING, JJ., and PAVY[*], J. Pro Tem.
*1175 LABORDE, Judge.
Defendants, Soreal N.V. Corporation and Ceteno Corporation, appeal the judgment of the trial court which found that defendants breached an oral contract with plaintiff, Collins Dozer Service, Inc. Defendants also appeal the trial court's dismissal of their third party demands against Sidney Gibbs and Parker Gibbs. Plaintiff answers urging the dismissal of defendants' appeal; in the alternative, that the judgment be affirmed on the merits, but that damages be increased to not less than $25,000.00. Plaintiff does not reurge its action against the Gibbs on appeal.
The able trial judge summarized the salient facts of this case in his reasons for judgment which we have taken the liberty of reproducing below:
"This suit is for breach of an oral contract between the plaintiff and defendants for clearing land located in Rapides Parish. The land in question, `Echo Ranch', is owned by the defendants Soreal N.V. Corporation and Ceteno Corporation. At the time of the alleged contract Echo Ranch was managed by Sherman G. Knowles pursuant to a farm management contract with defendant corporations.
In May, 1980, Sidney Gibbs and his son, Parker Gibbs, lessees of Echo Ranch, arranged through a friend, Don Descant, to have Don Collins attend a pig roast on Echo Ranch. The evidence indicates that Don Collins was invited to the pig roast to meet with representatives of the Echo Ranch for purposes of discussing land clearing.
On the afternoon of the pig roast Sidney Gibbs took Don Collins on a tour of the ranch and discussed the areas that were to be cleared. During the pig roast Sidney and Parker Gibbs, Sherman Knowles, Christian Van DeViver and Guido Clays, the latter two gentlemen being representatives of the defendant corporations, and Don Collins discussed the need to have certain land clearing performed. Don Collins' experience and ability to clear the acreage in question in a short period of time were also discussed.
Collins testified that he was instructed by Sidney Gibbs to move the land clearing equipment and men needed to complete the clearing operation onto Echo Ranch. After having moved his equipment onto the ranch, Don Collins was denied access to the property for clearing. On or about July 18, 1980, Collins relocated his equipment and men to Natchitoches Parish, Louisiana.
The issues presented before this Court are whether there existed actual or apparent authority on the part of Sidney Gibbs and/or Sherman Knowles to enter into a contract with Collins Dozer Service, Inc., for land clearing operations; and, if these acts were unauthorized, were they ratified by the defendant corporations.
As evidenced by the deposition of Sherman Knowles, it was decided from the inception of the purchase that the land in question needed to be cleared. Meetings took place between Gary Partney, the registered agent for the corporations, Christian VanDeViver [sic], Guido Clays, Sherman Knowles and Sidney Gibbs concerning the need for clearing the timberland. Knowles stated that because Sidney Gibbs had previous experience in land clearing, it would be better to allow Gibbs to select someone to do the clearing operation. There was also a discussion as to the necessity that the land clearing be completed in a relatively short period of time. Knowles stated that there were discussions concerning the amount of acreage to be cleared and the price that was to be paid to Don Collins. Collins trial exhibit # 7 further shows the intent of the parties to contract with Collins Dozer Service, Inc., for land clearing. This exhibit is a contract prepared by Gary Partney, drafted for the purpose of effecting a written agreement with Collins Dozer Service, Inc. Apparently, the selection of Don Collins *1176 by Sidney Gibbs was communicated to Mr. Partney for the purpose of preparing the written contract.
Defendants filed in evidence resolutions of the two corporations requiring that all contracts were to be in writing and approved by Gary Partney. Defendants sought to prove that all contracts in the past for services performed on Echo Ranch were in writing and approved by Partney. However, the evidence indicates that Sidney Gibbs and/or Sherman Knowles, on previous occasions had orally contracted for work to be performed on the ranch without prior approval of Partney. Although prior written approval was not obtained, they were still allowed to submit those bills to Partney for payment. It was further shown at trial that the defendants' alleged requirement that all contracts be in writing was not communicated to Don Collins by the defendants."
After carefully reviewing the record and applicable law, we are left with the inexorable conclusion that the trial court was manifestly erroneous in finding that Sidney Gibbs acted with the implied consent of defendant corporations and with apparent authority to act on their behalf. Further, we find no express authority to empower Sidney Gibbs to bind defendant corporations as their authorized agent.[1]
Apparent authority is a concept of estoppel operating in favor of a third person seeking to bind a principal for the unauthorized act of a putative agent. Byles Welding & Tractor, Inc. v. E.W. McDaniel, 441 So.2d 48, 49 (La.App. 3d Cir.1983). The burden of proving apparent authority is on the party seeking to bind the principal. Id. at 50.
The judicially created doctrine of apparent authority has two requirements which must be met before application is possible: (1) the principal must make some form of manifestation to the innocent third party; and (2) the third party must reasonably rely on the purported authority of the agent as a result of the principal's manifestations. Pargas, Inc. v. Estate of Taylor, 416 So.2d 1358, 1362 (La.App. 3d Cir.1982); Lilliedahl & Mitchel, Inc. v. Avoyelles Trust and Savings, 352 So.2d 781, 787 (La.App. 3d Cir.1977). In the case sub judice, we find no evidence of the defendant corporations clothing Sidney Gibbs with apparent authority to contract with Collins Dozer Service, Inc.
As mentioned earlier, Donald Collins was invited to a pig roast as a candidate to clear land at defendant corporations' farm in Echo, Louisiana. He was invited through Don Descant, a mutual friend of Mr. Collins and Parker Gibbs, Sidney's son. Mr. Collins knew no one at the social except Don Descant. Mr. Collins had never heard of the defendant corporations.
Mr. Collins knew only that the Gibbs were the lessees of the Echo Ranch which was owned by the defendant corporations. He was taken by the Gibbs to survey the property to be cleared. Mr. Collins was introduced to several other people at the gathering, including Sherman Knowles, Guido Clays, and Christian Van DeViver, the latter two being foreign representatives of the defendant corporations. The local representative of the defendant corporations was Gary W. Partney who did not attend the pig roast. The two corporations, Soreal N.V. and Ceteno, each appointed Mr. Partney as their authorized agent.[2]
The foreign representatives of the defendant corporations were present while plaintiff and Sidney Gibbs discussed the land clearing, but did nothing to suggest that Gibbs had authority to contract for the corporations. To the contrary, the record shows that the gentlemen working for the *1177 corporations barely acknowledged the presence of Mr. Collins. Sherman Knowles, the farm manager, discussed the land clearing with Donald Collins. The record does not show that Mr. Gibbs was clothed with apparent authority by Sherman Knowles (a person who himself lacks authority to freely contract on behalf of the defendant corporations). The authorized representative of the defendant corporations, Mr. Partney, had not even met plaintiff until after the suit was brought. Mr. Partney in no way cloaked Sidney Gibbs with apparent authority to contract for the defendant corporations.[3]
Plaintiff asserts that this case is identical to Barras v. Botany Bay Corporation, 286 So.2d 711 (La.App. 4th Cir.1974). There, the court found that defendant corporation's employee, Alex O'Bryan, possessed at least apparent authority as agent to secure the services of plaintiff for certain land clearing and dirt work. The court enumerated several duties and responsibilities of Mr. O'Bryan to show that he was "vastly more than a caretaker." Id. at 713. We are unable to favorably compare the duties of O'Bryan and Sidney Gibbs. The facts of this case make the Barras case inapposite.
Assuming facts beyond the record, i.e., that the defendant corporations made some form of manifestation to Mr. Collins, we would have to decide whether his reliance on the purported authority of Gibbs was reasonable. Concisely put, plaintiff asserts that he was introduced to agents of defendant corporations; surveyed the land to be cleared; negotiated a $100,000.00 contract with the lessee of the land; and concluded the deal with people he had never met before, all within 45 minutes. We not only find that plaintiff failed to prove that his reliance was reasonable, but that this reliance would be the epitome of blind opportunism. A third party may not blindly rely on the assertions of an agent, but has a duty to determine, at his peril, whether the agency purportedly granted by the principal permits the proposed act by the agent. Freeman v. Royal Shield Entertainment, 411 So.2d 559, 561 (La.App. 1st Cir.1982). Mr. Collins was given the name of the defendant corporations' authorized agent, Gary Partney, but did not attempt to contact him. At the very least, Mr. Collins could have protected himself by calling the farm manager, Sherman Knowles, and inquired into Sidney Gibbs' authority to contract.
We must now determine whether the defendant corporations ratified the actions of Sidney Gibbs by their representatives' silence. In order for ratification to occur, the person to be bound must with full knowledge of all material facts express an interest to adopt the unauthorized acts. Pargas, 416 So.2d at 1362. There was no showing that the defendant corporations' representatives fully appreciated what Sidney Gibbs is alleged to have done; additionally, no agent of the defendant corporations expressed a desire to ratify the purported contract with Mr. Collins. The actions of Sidney Gibbs were not ratified.
In conclusion, we find that Sidney Gibbs lacked authority, actual or apparent, to contract on behalf of defendant corporations; furthermore, the purported contract was never ratified by defendant corporations. The findings of the trial court to the contrary are clearly wrong. The trial court dismissed Sidney and Parker Gibbs from the suit without appeal taken by plaintiff; therefore, we need not address any possible obligations between plaintiff and the Gibbs.
For the above and foregoing reasons, the portion of the judgment of the trial court dismissing defendants, Sidney and Parker Gibbs, is affirmed; the portion of the judgment against defendants, Soreal N.V. Corporation and Ceteno Corporation, is reversed. Costs of trial and appeal are hereby taxed to plaintiff-appellee, Collins Dozer Service, Inc.
*1178 AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
PAVY, J. Pro. Tem., dissents and assigns written reasons.
PAVY, Judge Pro Tem., dissenting with reasons.
The majority falls into error in concluding that there can be no liability herein without a completed contract. Plaintiff's claim need not rest on a completed contract. He does not seek recovery for breach of contract but only reimbursement for moving expenses, loss of equipment time, and some small amount of land clearing actually done. These occurred when he moved onto Echo Ranch in contemplation of performing, all at the instance of Sidney Gibbs.
I believe the rule stated in the Restatement of Agency (2d Ed.) should apply here. It provides:
"Sec. 258. Incidental Misrepresentations
In the absence of an exculpatory agreement, a principal authorizing a servant or other agent to enter into negotiations to which representations concerning the subject matter thereof are usually incident is subject to liability for loss caused to the other party to the transaction by tortious misrepresentations of the agent upon matters which the principal might reasonably expect would be the subject of representations, provided the other party has no notice that the representations are unauthorized." (Emphasis added)
Gibbs was plaintiff's main tenant on Echo Ranch. He had negotiated for the defendant corporations on routine matters. His son took Collins (owner of the plaintiff corporation) on a survey of land to be cleared. The testimony regarding events at the pig roast indicates that Gibbs was a major participant in the discussions. Gibbs was more than a mere tenant.
That testimony also leads to the conclusion that all the essential terms of a land-clearing contract had been reached that evening. It was subject to completion of timber-cutting operations on the land and an arrangement with Bo Lafitte who had a previous land-clearing contract. From the defendants' viewpoint, it would also have been necessary to reduce the agreement to writing as their policy required written contracts in all cases. Collins knew nothing about this requirement; he was not told anything about it that evening.
Collins testified that he realized a completed contract was not made on the occasion of the pig roast because of the prior contract with Bo Lafitte. In Collins' eyes, that was the only thing necessary to contract completion. Gibbs and Collins contacted Bo Lafitte. An arrangement was made to modify Lafitte's prior clearing contract so that the one with Collins could be finalized.
It was only after the rearrangement with Bo Lafitte that plaintiff moved onto Echo Ranch. This was done with assurances from Gibbs that plaintiff would not be long in starting the clearing and that, if there was any delay, bulldozer work or some land-clearing could start in the meantime. After moving onto Echo Ranch, Collins and Gibbs contacted Temus Jeansonne, the head of the logging operations, concerning completion of that operation. Shortly thereafter, Collins and Gibbs fell out over the interim dozer work and Collins moved his equipment away.
The majority's assertion that Collins was guilty of blind opportunism in claiming to have completed a $100,000 contract in 45 minutes is not realistic. The evidence shows that Collins arrived at Echo Ranch in midafternoon. After surveying the land, he participated in a conference with the other parties. Further discussions were held during the pig roast. It is not uncommon for contracts of this kind to be completed without reducing them to writing. Collins never claimed that a full contract was completed that night.
The proof that Gibbs had some authority to act for the defendant corporation can be inferred not only from Gibbs' actions but from the inaction of all others associated *1179 with defendants. There is no question (1) that defendants wanted the land cleared as soon as possible, (2) that that an agreeable price was reached on the occasion of the pig roast, (3) that Collins had the equipment necessary to clear the land with the rapidity defendants desired. Yet, for over two months, Gibbs alone acted. If Gibbs was not to finalize the agreement, who was? The pig roast was held on May 10. It was in July before anyone other than Gibbs took any action to finalize the contract. That was when Gibbs visited Gradey Partney, the lawyer and agent-in-fact for defendants. As a result of that contact, Partney drafted a document containing all of the essentials of a timber-clearing contract. Upon consideration of these facts, it must be concluded that Gibbs had authority to work towards finalizing the contract. If he did have such authority, then his assurance to plaintiff to move onto the ranch at the time that he did was a representation incidental to that authority. Plaintiff suffered as a result of the misrepresentation and should be compensated, all in accordance with the quoted restatement text.
NOTES
[*] Judge H. Garland Pavy of the Twenty-Seventh Judicial District Court participated in this decision appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] There is no evidence in the record to satisfy plaintiff's burden of establishing that Sidney Gibbs had express authority to contract on behalf of the defendant corporations. Consequently, this contention does not merit discussion.
[2] These appointments are recorded in the conveyance office of Rapides Parish.
[3] Plaintiff makes much of the fact that a contract was drafted by Mr. Partney naming plaintiff the contractor to clear the land. The only significance we draw from this is that the defendant corporations had attempted to follow their usual course of business.