578 So.2d 226 (1991)
Renella DESORMEAUX, Plaintiff-Appellant,
v.
Gordon LALONDE and Ruth Lalonde; Trinity Universal Insurance Company; Security National Insurance Company; Trinity Universal Insurance Company of Kansas, Inc., Defendants-Appellees, and
The Fidelity & Casualty Company of New York, Defendant-Appellant,
City of Lafayette, Intervenor-Appellee.
No. 89-1182.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1991.
Writs Denied June 21, 1991.
*227 Ronald F. DeFrances, Baton Rouge, for defendant/appellantFidelity and Cas. Co. of New York.
Guillory, McGee & Fontenot, Robert K. Guillory, Jed G. Gremillion, Eunice, for plaintiff/appellee/appellant.
Debaillion & DeBaillon, Paul N. Debaillion, Lafayette, for plaintiff/appellee, City of Lafayette.
John K. Hill, Jr., Lafayette, for appellee/appellant, Trinity Universal Ins. Co.
Gordon Lalonde, in pro. per.
Ruth Lalonde, in pro. per.
Before STOKER, KNOLL and KING, JJ.
KING, Judge.
This appeal presents for consideration whether the trial court erred in denying a motion for dismissal made by one defendant and whether the judgment of the trial court was correct.
Renella Desormeaux (hereinafter plaintiff) filed suit against Ruth Lalonde and Gordon Lalonde as the result of an automobile accident involving plaintiff and Ruth Lalonde on November 16, 1984, in Lafayette, Louisiana. Plaintiff was seriously injured when driving a vehicle owned by her employer, the City of Lafayette (hereinafter City), while in the course and scope of her employment with the City, when the vehicle was struck from the rear by a vehicle being driven by Ruth Lalonde and owned by Gordon Lalonde. The Lalonde vehicle was uninsured. Plaintiff also named as defendants in the suit Trinity Universal Insurance Company, Security National Insurance Company and Trinity Universal Insurance Company of Kansas, Inc. (hereinafter Trinity), the plaintiff's own uninsured/underinsured motorist insurer. By supplemental petition, plaintiff named as an additional defendant, The Fidelity and Casualty Company of New York (hereinafter Fidelity), as the alleged uninsured/underinsured motorist insurer for the City.
The City filed an intervention in the suit seeking to recover worker's compensation benefits it had paid to plaintiff. Plaintiff and Trinity both filed Motions For Summary Judgment seeking to have the City's intervention for worker's compensation benefits dismissed against Trinity, as the uninsured/underinsured motorist insurer of plaintiff, and these motions were both granted, reserving unto the City whatever rights it might have against the other parties *228 in the suit, and a formal written judgment was signed on August 12, 1986.
Fidelity filed a Motion for Summary Judgment seeking dismissal from the suit on the ground that Fidelity's insurance policy did not provide uninsured/underinsured motorist coverage to the City on the date of the accident. Trinity then filed another Motion for Summary Judgment to have the court determine that Fidelity provided the primary uninsured/underinsured motorist coverage for the City, that the policy issued by Trinity would be excess uninsured/underinsured motorist coverage, that Fidelity's policy limits exceeded plaintiff's damage claim, and that for these reasons plaintiff's suit against Trinity should be dismissed. The motions were heard on May 16, 1988, after which the trial judge denied Fidelity's Motion for Summary Judgment, and granted Trinity's Motion for Summary Judgment. The trial judge ruled that the insurance policy issued by Fidelity provided the primary uninsured/underinsured motorist coverage to the City owned vehicle plaintiff was operating at the time of the accident, with a limit of $900,000.00, and that said coverage was not subject to the City's $100,000.00 self-insured retention limit. A formal written judgment was signed on May 20, 1988.
Fidelity sought a supervisory writ to this Court from the ruling of the trial court in favor of Trinity and against it. The writ was granted and made peremptory, and this Court reversed, vacated, and set aside the granting of the Motion for Summary Judgment brought by Trinity. See Renella Desormeaux v. Gordon Lalonde, et al, an unreported writ decision, bearing Number 88-541 on the Docket of this Court rendered on May 20, 1988. This Court held that an issue of fact existed as to whether the waiver by the City of uninsured/underinsured motorist coverage in its policy of insurance with Fidelity was effective as there was a question of fact whether the risk manager of the City had actual authority to reject the uninsured/underinsured motorist coverage or, if he only had apparent authority, whether the City ratified his rejection.
After the trial on the merits was concluded, on May 26, 1988, the trial court rendered oral reasons for judgment in favor of plaintiff and against Fidelity. The trial court found that the City did have in effect with Fidelity a policy of uninsured/underinsured motorist coverage at the time of the accident, subject to a $100,000.00 self-insured retention limit by the City, which was deductible from the total award rendered in favor of plaintiff against Fidelity. Plaintiff was awarded damages against defendant, Fidelity, in the amount of $429, 581.99. The trial court took under advisement the intervention claim of the City and later rendered written reasons, on September 6, 1988, granting judgment in favor of the City and against plaintiff, on its intervention, for worker's compensation benefits paid to plaintiff, in the amount of $38,537.80. No judgment was rendered against Ruth and Gordon Lalonde or Trinity, except on the City's intervention claim against Gordon Lalonde. A formal written judgment was signed on May 18, 1989.
Fidelity timely suspensively appeals citing three assignments of error:
(1) The trial court erred in failing to grant a directed verdict or dismissal in favor of Fidelity at the conclusion of plaintiff's evidence;
(2) The trial court erred in finding that the risk manager for the City was not authorized to reject uninsured/underinsured motorist coverage on behalf of the City; and
(3) The trial court erred in awarding excessive and speculative damages to plaintiff.
Trinity timely devolutively appealed but subsequently dismissed its appeal. Plaintiff also timely devolutively appealed assigning error to the trial court's finding that the City was entitled to recover worker's compensation benefits paid to plaintiff, out of Fidelity's uninsured/underinsured motorist coverage provided to the City, without offset for the City's self-insured retention limit. We affirm.

*229 LAW
The first error urged by Fidelity is that the trial court erred in failing to grant a directed verdict or dismissal in favor of defendant at the conclusion of plaintiff's case-in-chief. Fidelity argues that plaintiff offered no evidence concerning uninsured/underinsured motorist coverage, under the insurance policy between Fidelity and the City as only the insurance policy itself was offered into evidence and, on its face, contained no uninsured/underinsured motorist coverage. The renewal insurance policy received in evidence did not have attached a written rejection of uninsured/underinsured motorist coverage attached, and Fidelity argues that, under La. R.S. 22:1406(D)(1)(a), in effect at the time of the accident, a written rejection did not have to be attached to a renewal policy to reject coverage; therefore, plaintiff failed to prove a prima facie case against Fidelity.
When an automobile liability policy is issued, uninsured/underinsured motorist coverage attaches by operation of law, unless the insured or its legal representative validly rejects the uninsured/underinsured motorist coverage in writing. La.R.S. 22:1406(D)(1)(A). When the insurer asserts that there has been a rejection of uninsured/underinsured motorist coverage, it is the insurer, not the injured party, who bears the burden of proving a valid rejection. Aramburo v. Travelers Ins. Co., 426 So.2d 260 (La.App. 4 Cir. 1983), writ den., 433 So.2d 161 (La.1983).
Plaintiff proved that, at the time of the accident, Fidelity issued an effective automobile liability insurance policy to the City and that the tortfeasor, Ruth Lalonde, was an uninsured motorist. Plaintiff also proved she was operating the City's vehicle at the time of the accident. Therefore, because the burden of proof lies with the insurer to prove a valid rejection of uninsured/underinsured motorist coverage, rather than upon the party claiming under the policy, we find that the trial court did not commit manifest error or abuse its discretion in declining to grant Fidelity's motion for a directed verdict or dismissal of plaintiff's claim as to it. See Kemna v. Warren, 514 So.2d 237 (La.App. 5 Cir. 1987). We also find, in view of this Court's previous ruling on Fidelity's writ taken in this case, that the doctrine of law of the case applies. Since there was a final judgment in the suit decreeing that there existed a question of fact as to whether there was uninsured/underinsured motorist coverage under Fidelity's policy issued to the City, the trial court did not abuse its discretion or commit manifest error in denying the motion. La.C.C.P. Art. 1672(B). Thus, we find Fidelity's first assignment of error to be without merit.
The second assignment of error raised by Fidelity is that the trial court erred in finding that the risk manager for the City of Lafayette was not authorized to reject uninsured/underinsured motorist coverage on behalf of the City.
At the time of the accident, La.R.S. 22:1406(D)(1)(A) provided:
"No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured *230 or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto."
The issue of fact presented by this second assignment of error is whether the risk manager, hired by the City, was authorized and empowered to reject for the City the uninsured/underinsured motorist coverage under a policy of automobile liability insurance by Fidelity to the City.
Fidelity introduced into evidence four consecutive renewal automobile liability insurance policies issued by Fidelity to the City covering the period of time from November 1, 1981 to November 1, 1985. Fidelity also introduced into evidence a letter dated February 26, 1982, that rejected uninsured/underinsured motorist coverage for the City, which was signed by Wayne Dauterive (hereinafter Dauterive) as risk manager for the City. Fidelity argues that Dauterive had been granted actual authority to manage the City's risk management program and, in order to satisfactorily accomplish the function of risk management, had the actual legal authority to cancel or reject on behalf of the City any unwanted uninsured/underinsured motorist coverage.
Fidelity claims that the City Council granted to Dauterive, as risk manager, a mandate to administer the insurance needs of the City and that this implicitly included the right to reject uninsured/underinsured motorist insurance coverage. Fidelity contends, in the alternative, that Dauterive had at least apparent authority to reject insured motorist insurance coverage, and that Fidelity relied on his apparent authority in good faith. Fidelity further alternatively asserts that the City's attorney granted Dauterive the authority to reject the uninsured/underinsured motorist coverage. Finally, Fidelity further alternatively contends that Dauterive's act of rejecting uninsured/underinsured coverage on behalf of the City was ratified either by the acts of the City Council or the City's attorney.
The trial court in its reasons for judgment stated that it could find nothing in the ordinance, creating the position of risk manager for the City, that authorized and empowered the risk manager as the legal representative of the City in risk management matters except as specifically set forth in the ordinance. The trial judge further stated that, if the ordinance had intended for the risk manager to be a duly authorized legal representative of the City to reject uninsured/underinsured insurance for the City, that it would have indicated that intention and given that authority in the ordinance. The trial court noted the ordinance clearly stated, "[t]he City Attorney shall represent the City in any and all risk management-related matters." Ordinance No. 0-1983, Article III, Section 1-3. (taken from a copy of the City Ordinance attached to Fidelity's brief and acknowledged in plaintiff's brief to be a correct copy, even though the ordinance was received in evidence but not given to the minute clerk to be made a part of the trial record.)
Fidelity did not introduce any evidence showing that Dauterive was formally and actually authorized or empowered by the City to write a letter rejecting uninsured/underinsured motorist coverage for the City. The burden of proving actual authority of an agent to bind a governmental body is on the party seeking to bind the governmental body. Cf. Richardson & Bass v. Board of Levee Commissioners, 231 La. 299, 91 So.2d 353 (1956).
Fidelity introduced no evidence proving that Dauterive had apparent authority from the City to be its legal representative in risk management related matters except the letter he had written rejecting coverage. The burden of proving apparent authority is on the party seeking to bind the principal. A third party may not blindly rely upon the assertions of an agent, but has a duty to determine, at his peril, whether the agency purportedly granted by the principal permits the proposed act by the agent. Collins Dozer Service, Inc. v. Gibbs, 502 So.2d 1174 (La. *231 App. 3 Cir.1987), writ den., 504 So.2d 881 (La.1987).
Finally, Fidelity contends that the evidence shows that the City Council or the City's attorney authorized and ratified Dauterive's action because they knew what he had done.
In reviewing the evidence in the record, we do not find that Dauterive had actual or apparent authority from either the City Council or the City's attorney to reject the uninsured/underinsured motorist coverage on behalf of the City. Neither do we find from the evidence that the City Council or the City's attorney expressly ratified Dauterive's action. For these reasons, we do not find that the trial court committed manifest error or was clearly wrong in ruling that Dauterive, as risk manager for the City, was not an actual or apparent legal representative of the City authorized to reject uninsured/underinsured motorist coverage for the City and that neither the City nor its attorney expressly ratified his actions. Fidelity's second assignment of error is without merit.
The third assignment of error set forth by Fidelity is that the trial court awarded excessive and speculative damages to plaintiff.
Fidelity argues that the $130,000.00 award for pain and suffering, mental anguish, past, present, and future, and the $130,000.00 award for permanent physical dysfunction are excessive, and that only a total of $150,000.00 should have been awarded to plaintiff. Fidelity further contends that the amount awarded to plaintiff for loss of future wages and retirement benefits is speculative because plaintiff failed to prove her inability to continue in her current job.
An award for damages cannot be overturned on appeal unless the award is a clear abuse of discretion. Townley v. Manuel, 509 So.2d 515 (La.App. 3 Cir.1987). After a review of the record, we do not find that the trier of fact clearly abused its discretion in awarding damages to plaintiff. Thus, we find this assignment of error to be without merit and affirm the trial court's quantum award for the damages sustained by plaintiff.
Plaintiff appeals contending that the trial court erred in allowing the City to recover the worker's compensation benefits it paid to plaintiff (out of the uninsured/underinsured motorist insurance coverage provided by Fidelity to the City) without any offset for the $100,000.00 self-insured retention limit of the City.
Plaintiff was injured while in the course and scope of her employment and, it is undisputed that the City paid her $38,537.80 in worker's compensation benefits as of the time of trial. The trial court determined that the City's policy with Fidelity was subject to a $100,000.00 self-insured retention limit (deductible). Plaintiff argues that the trial court erred in holding that the City was entitled to reimbursement for the $38,537.80 paid to her in worker's compensation benefits since the City had retained a self-insured retention limit (deductible) for the first $100,000.00 of damages the City might be liable for arising out of an accident involving one of the City's cars. Plaintiff contends that this, in effect, reduces by $138,537.80 her total award for her damages caused by the uninsured tortfeasor.
The central purpose of the worker's compensation act is the protection of the injured employee. The compensation act protects the injured employee by providing compensation and by reserving to the employee any tort recovery from a third person that exceeds the employee's compensation benefits. The uninsured motorist act protects an injured motorist by making available an opportunity for recovery of damages arising from an automobile accident involving a tortfeasor that was not insured. Johnson v. Fireman's Fund Ins. Co., 425 So.2d 224 (La.1982). However, this is not so in all situations, such as where no insurance coverage is available because there has been a valid rejection of uninsured/underinsured motorist insurance coverage or where the limits of such coverage are inadequate to fully compensate the injured motorist because the insured has selected lower limits.
*232 Reimbursement for worker's compensation benefits paid by an employer is allowed to prevent double recovery by the employee to the extent of any recovery from a tortfeasor. In the present case, plaintiff has made a recovery for some of her damages caused by the uninsured tortfeasor even though her total recovery falls short of her total damages because of the lower limits selected by the City. While it is true that the City's uninsured/underinsured motorist policy does not provide coverage for the first $100,000.00 of loss occasioned by an accident with an uninsured/underinsured motorist with one of the City's vehicles, so that plaintiff cannot recover the first $100,000.00 of her damages from Fidelity, it does provide plaintiff with insurance coverage for an uninsured/underinsured motorist she would ordinarily not have available except for the City's insurance. Plaintiff did not herself procure or pay the premium for the City's uninsured/underinsured motorist insurance, the City did. While there is a deductible for the City's coverage, this does not change the fact that plaintiff has made a recovery for some of her damages occasioned by an uninsured tortfeasor. The City's deductible is only applicable where the City itself is liable in tort. Under the facts of this case, the City has no tort liability to plaintiff and could have no liability to plaintiff because she was an employee whose exclusive remedy would be in worker's compensation, which plaintiff was receiving. By law, the plaintiff has a liability to the City to reimburse the City for all worker's compensation benefits it paid to her up to the extent of any recovery from an uninsured tortfeasor. If the City's uninsured/underinsured limits had only been $38,537.80, with no deductible, the plaintiff would still have been required to reimburse the City for the worker's compensation benefits she received and would have received nothing from the City's uninsured/underinsured motorist insurer for her damages caused by the uninsured tortfeasor.
For these reasons we find that the trial court was not manifestly in error or clearly wrong in allowing the City to recover on its intervention the worker's compensation benefits it paid to plaintiff from the proceeds of plaintiff's uninsured/underinsured motorist recovery from Fidelity without any credit for the City's self-insured retention limit.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are taxed against defendant-appellant.
AFFIRMED.