# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 04-665

**SUSIE WINTERS**

**VERSUS**

**OTHA C. DODSON, ET AL.**

**************
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 204,009
HONORABLE HARRY F. RANDOW, DISTRICT JUDGE

**************
**SYLVIA R. COOKS**
**JUDGE**
**************

Court composed of Sylvia R. Cooks, John D. Saunders and Oswald A. Decuir, Judges.

Decuir, J., dissents and assigns reasons.

**AFFIRMED.**

Samuel H. Thomas
Attorney at Law
209 North Walnut Street
Tallulah, LA. 71282
(318) 574-1953
Counsel for Plaintiff/Appellee:
    Susie Winters

William H. Eckert
Ginger K. Deforest
Ungarino & Eckert
Suite 1280 Lakeway Two
3850 North Causeway Boulevard
Metairie, LA. 70002
(504) 836-7546
Counsel for Defendant/Appellant:
    State National Insurance Company

**COOKS, Judge**.

## STATEMENT OF THE CASE

The issue presented in this case is the validity of a waiver of UM coverage executed by an employee of Gunter Farms, Carey Marchand. The matter was tried before the Honorable Harry F. Randow. Following an extensive review of the testimony and law, the trial court found the waiver of UM coverage was not valid and the Plaintiff, Susie Winters, was entitled to recovery under the policy. State National Insurance Company (State National) filed this appeal. For the reasons assigned below, we affirm the decision of the trial court.

## STATEMENT OF THE FACTS

The Plaintiff, Susie Winters, was a long-standing employee of Gunter Farms, Inc. On January 2, 2001, she was driving a company vehicle and was traveling westbound on La. 488 when an automobile driven by Otha Dodson ran a stop sign and struck her automobile. Ms. Winters was ejected from the rear window of her car and sustained severe injuries. The tortfeasor, Ms. Dodson, was insured by State Farm Insurance Company. State Farm paid its policy limits of $25,000.00.

The vehicle being driven by Ms. Winters was owned by Gunter Farms, Inc. and insured by State National Insurance Company. While the policy provided liability coverage of $1,000,000.00, State National argued UM coverage was waived by Gunter Farms, Inc. through its employee, Carey Marchand.

State National contends the trial court erred in concluding Mr. Marchand was not authorized to execute the waiver of UM coverage on behalf of the corporation. State National asserts Mr. Marchand was the vice-president of Gunter Farms, Inc. as evidenced by documents filed with the Secretary of State. Additionally, State National contends Mr. Marchand was responsible for making all decisions for the

2

corporation relating to insurance and other financial matters. It also contends Mr. Marchand was the business manager for Gunter Farms, Inc. and an equal partner in the decision-making for the company along with Joe Gunter. State National's contention is consistent with Carey Marchand's testimony at trial. Carey Marchand testified he was the vice-president for Gunter Farms, Inc. and responsible for all business decisions. However, under cross-examination he admitted that in the case of a conflict, Mr. Gunter's decision prevailed. The trial court found Mr. Marchand's characterization of his authority and the extent of his decision-making ability within the corporation was not credible. The trial court further found State National was not reasonable in relying on Mr. Marchand's authority absent some authorization from Gunter Farms, Inc.

The record indicates the Gunter family had been in the egg business for several years. Joe Gunter testified his grandfather started the egg business and his parents then took over the business. Joe graduated from college in Industrial Agricultural Technology with a speciality in nuclear science. He went to Airline Training Academy and became a commercial airline pilot. In 1993 he decided to return home and take over the family egg business. Gunter Farms, Inc. was then incorporated with Joe Gunter as president. His father, Kenneth Gunter, became the manager of the company and drew a salary of $500.00 a month. His mother drew a salary of $250.00 for bookkeeping and invoices. In 1993, when the business was in trouble and needed capital, Joe turned over 50% of his shares to an investor, and the C.E.O. of the corporation, Charles McCoy, who then became the holder of 100% of the stock of Gunter Farms, Inc.

Carey Marchand was hired by Joe Gunter in 1994 to help in the business office. Joe testified he met Carey Marchand when the two were students at LSU. At that

time, Mr. Marchand owned a printing company which he started while in college. Mr. Marchand left college and went to work for Gunter Farms, Inc. Mr. Marchand was responsible for invoicing, the book work, inventory and the computer. When Mr. Marchand went to work for Gunter Farms, Inc., Joe testified: "The only thing that was said was that if the company started making a profit, Mr. McCoy would give back the shares to me and then I would in turn do a 50/50 with Carey." Mr. Gunter testified he never regained any of the stock he had turned over to Mr. McCoy in 1993. The company filed for bankruptcy in 2001.

State National contends Gunter Farms, Inc. never opted to have UM coverage on any owned vehicle and the policy in dispute in this case was no exception. However, Joe testified Gunter Farms, Inc. purchased its first vehicle, a Volvo truck, in 1995 or 1996. He admitted that vehicle did not have UM coverage. However, he explained UM coverage was rejected because "I was the only driver, I think I put myself as the only driver on the policy so I'm – you know, I'm President of the company, I'm not going to sue the company if I got hurt." However, Joe testified when Gunter Farms, Inc. began renting a fleet of trucks and expanded its inventory of vehicles, he insisted on "full coverage" which meant UM coverage. When questioned regarding a meeting at Ruth's Chris Steakhouse with Gaynell Martin, insurance agent for State National, to discuss switching to State National for insurance coverage, he recalled that he made it clear to Ms. Martin he wanted "full coverage" which meant UM coverage. Mr. Marchand was present at this meeting. He denied ever authorizing or directing Mr. Marchand to subsequently waive UM coverage on behalf of Gunter Farms, Inc. He further testified Mr. Marchand served as a officer of the corporation in name only, since no formal action was ever taken to install him as such; and Mr. Marchand had no actual or implied authority to act on

4

behalf of the corporation without his express approval.

In a well-reasoned opinion, the trial court found Joe was "adamant and consistent in his testimony that he informed Mr. Marchand, following a discussion of the issue, that UM coverage was to be purchased." He found Mr. Marchand exaggerated his importance within the company and his decision making authority. The trial court found Mr. Marchand gave up his college career to pursue a business venture which ultimately failed. For this reason, the trial court found Mr. Marchand was not objective nor entirely credible regarding his role in the business. Specifically, he noted:

> Mr. Gunter and Mr. Marchand further testified that they would discuss any issues that arose and then make a decision. However, Mr. Gunter expressly stated in his testimony that he had the final authority and "say so" when he and Mr. Marchand had a disagreement over the business. Mr. Marchand, on the other hand, was adamant in his opinion that he and Mr. Gunter were "equals." He was incensed when plaintiff's counsel questioned him regarding the fact that he was an employee while Mr. Gunter was President of the corporation. However, when pressed by opposing counsel, Mr. Marchand did admit that Mr. Gunter had the final decision-making authority when there was a disagreement between the two. Furthermore, Mr. Gunter testified that he informed Mr. Marchand for the need for "full" coverage. Mr. Gunter also testified that Mr. McCoy, a private investor and stockholder in the corporation, requested that they maintain full coverage in order to protect his investment in the corporation. Mr. Gunter further testified that he informed Mr. Marchand to purchase a policy that provided full coverage with a $1,000,000.00 umbrella. He stated that he told Mr. Marchand that the corporation needed more coverage than it had previously needed, since it had expanded to include more trucks and other equipment.
> Mr. Gunter testified regarding a meeting with defendant, State National Insurance Company, Inc., agent, Gaynell Martin. Mr. Marchand recommended Gaynell Martin as the agency [which] had provided insurance to a similar egg company in New Orleans. Mr. Gunter and Mr. Marchand met with Gaynell Martin, and Mr. Gunter testified that he informed Gaynell Martin that the company had recently leased a number of delivery trucks and he wanted full coverage with a million dollar umbrella.
>
> . . . .
>
> The Court found Mr. Gunter to be reliable and forthcoming with

5

information. On the other hand, it was clear to the Court that Mr. Marchand felt slighted by the demise of Gunter Farms, Inc. He testified that he was placed in an uncomfortable situation as he is now eight (8) years behind career-wise and must make other plans for a career. The Court is also mindful of Mr. Marchand's obstinate attitude as to the issue of whether Mr. Gunter had authority over him when the two disagreed over decisions to be made on behalf of the corporation. Accordingly, the Court finds that Mr. Marchand had no implied authority to waive UM coverage for Gunter Farms, Inc. Defendant further claims, that even if Mr. Marchand was not given express or implied authority, he was clothed with the apparent authority to waive UM coverage for Gunter Farms, Inc. Apparent authority is a "judicially created concept of estoppel when binds the principal for the unauthorized act of an apparent agent in favor of a third person." *Id.* at 732. However, the principal must give the third party reason to believe that the agent had authority to act and the third party must have reasonably relied upon this. *Id.* Defendant cannot rely blindly upon the assertions of an agent, but has a duty to determine whether the principal permits the proposed act by the agent. *Desormeaux v. Lalonde*, 578 So.2d 226, 230-231 (La.App. 3 Cir. 1991). Clearly, the burden of proving an agency relationship lies with the party seeking to prove the existence of such a relationship. *Bank of Greenberg*, 520 So.2d at 732.

Mr. Gunter was clear in his testimony that neither defendant, State National Insurance Company, nor their agent, Gaynell Martin, inquired into whether Mr. Marchand had authority to waive UM coverage for Gunter Farms, Inc. nor did it request a corporate resolution for such authority. State National Insurance Company was unreasonable in relying upon Mr. Marchand's assertions that he was Vice-President of Gunter Farms, Inc. and, as such, had authority to validly waive UM coverage. . . . Further, the Court finds that Gaynell Martin was not reasonable in relying upon the instructions of Mr. Marchand in light of the statements by Mr. Gunter regarding full coverage.

Accordingly, we affirm the decision of the trial court.

**DECREE**

Based on the foregoing review of the record, we affirm the decision of the trial court. All costs of this appeal are assessed to State National Insurance Company.

**AFFIRMED.**

6

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-665

SUSIE WINTERS

VERSUS

OTHA C. DODSON, ET AL.

**DECUIR, J., dissenting.**

I respectfully dissent. The majority, like the trial court, faced with a sympathetic plaintiff, gives too much weight to Gunter's testimony. The majority readily addresses the motivations behind Marchand's testimony, while never considering that Gunter is a failed businessman, with no remaining economic interest in the corporation, trying to help a former employee at the expense of his insurer. While not unsympathetic to the plaintiff's condition, I believe the majority opinion unnecessarily risks returning the law surrounding waiver of UM to the same type of confusion that existed prior to the creation of the statutory UM form. Specifically, by ignoring objective factors in favor of subjective ones, the majority opens the door to litigation of every corporate waiver of UM coverage despite obvious objective evidence of authority.

When a corporation is insured and wishes to reject UM coverage, an authorized agent may execute the rejection form. *Tapia v. Ham*, 480 So.2d 855 (La.App. 2 Cir. 1985), *writ denied* 484 So.2d 138 (La.1986); *Rainey v. Gerarve*, 461 So.2d 464 (La.App. 5 Cir. 1984), *writ denied,* 463 So.2d 601 (La.1985). Generally, in order to bind the corporation, a corporate official must have acted with actual or apparent authority. *Arcemont v. Voisin,* 468 So.2d 785 (La.App. 1 Cir. 1985), *writ denied,* 474 So.2d 947 (La.1985). A corporation may also be bound by the act of a corporate

official, even though the act of the official was without formal authority, in those circumstances where it is shown that the corporation ratified the act. *Holloway v. Acadian News Agency, Inc.*, 488 So.2d 328 (La.App. 3 Cir. 1986). Such ratification may be express or implied, provided the action is not prohibited by the corporation charter, by statute, or is not contrary to public policy. *Acadian Production Corp. of La. v. Savanna Corp.*, 222 La. 617, 63 So.2d 141 (1953). In addition, the actions of the official which are ratified by the corporation are given retroactive effect. *Id.*

The majority concludes that Marchand had no authority to waive UM coverage. At the very least, the facts in this case support a finding that Marchand had apparent authority. The majority, like the trial court, based its conclusion on the testimony of Gunter regarding Marchand's authority to act on behalf of the corporation. Unfortunately, the majority overlooks blatant inconsistencies in Gunter's testimony as well as documentary evidence that refuted that testimony.

Specifically, the majority notes that Gunter testified that Marchand was not the Vice President of the corporation. This assertion is refuted by copies of the annual reports filed with the Secretary of State which lists Marchand as Vice President, at least one of which is signed by Gunter. The majority glosses over these documents despite the fact that they were executed when there was no ongoing legal dispute. Gunter also acknowledged that Marchand had business cards provided by the corporation listing him as Vice President.

Gunter also testified that he did not authorize Marchand to reject UM coverage claiming that he wanted full coverage. However, he ultimately testified that he told Marchand to do the same thing the corporation had been doing, and when asked what full coverage meant, he described liability coverage. Documentary evidence shows

2

that the corporation uniformly waived UM coverage whether through the actions of Gunter or Marchand.

Moreover, both Gunter and Marchand testified that Marchand was placed in charge of insurance matters. Gunter also testified that when he received calls regarding insurance issues he would refer the calls to Marchand.

The majority also finds that State National failed to inquire into Marchand's authority and never sought a corporate resolution for such authority. The record reveals that Gunter presented Marchand to Gaynell Martin, State National's agent, as the party handling insurance matters. Moreover, Louisiana law does not require a corporate resolution to waive UM coverage. *Meziere v. Farm Bureau Mut. Ins. Co.,* 560 So.2d 106 (La.App. 3 Cir. 1990).

Finally, Gunter testified that from 1994 on, Marchand was Secretary, Treasurer and Vice President of Gunter Farms. He qualified that statement by noting that the corporation never acted to designate Marchand for the positions. However, he also testified that the corporation did not officially act on any business transacted by the company, so the lack of resolutions regarding Marchand's position or authority to execute a valid waiver was not unusual.

Under these circumstances, I would find the trial court's conclusion that Marchand lacked authority to execute a valid UM rejection is not supported by the record and is, therefore, manifestly erroneous. Accordingly, I respectfully dissent.

3